## DOW CHEMICAL CO. v. HALLIBURTON OIL WELL CEMENTING CO.

### No. 9392.

Circuit Court of Appeals, Sixth Circuit.

Dec. 17, 1943.

474

Wilber Owen, of Toledo, Ohio (Calvin A. Campbell, of Midland, Mich., Wilber Owen, of Toledo, Ohio, Russell Wiles, of Chicago, Ill., and Donald L. Conner, of Midland, Mich., on the brief), for appellant.

Leonard S. Lyon, of Los Angeles, Cal., and Earl Babcock, of Duncan, Okl. (Frederick S. Lyon and Leonard S. Lyon, both of Los Angeles, Cal., and Earl Babcock, of Duncan, Okl., on the brief), for appellee.

Before ALLEN, HAMILTON, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This appeal attacks a decree finding invalid for want of invention Grebe & Sanford patent, 1,877,504, of which appellant is assignee. The patent covers a method and process of "treatment of deep wells." By stipulation of the parties two other patents relating to the same subject, Grebe, 1,916,122, and Grebe & Stoesser, 1,998,756, were sustained, and the court found that the appellee infringed certain of the claims of each of them. The complaint was dismissed as to Chamberlain patent, 2,024,718, but appellant has not questioned this action here. A counterclaim filed under Gravell patent, 1,678,775, was dismissed, the patent being held invalid, and no appeal was taken.

The Grebe & Sanford patent is especially concerned with the treatment of deep oil wells in which the mineral-bearing stratum consists of limestone or other calcareous formation, such as dolomite. The specifications state that the object of the invention is to increase the output from deep wells and to counteract some preventable natural causes for the decline of yield of a well, such as arise from the lack of sufficient ground pressure to cause the well to flow or from the building up of deposits of wax and other foreign substances in the channels of the oil-bearing rock which obstruct and may even cut off the flow of oil to the well. Among other methods for opening up a clogged wellhole the specifications particularly discuss that disclosed in Frasch patent, 556,669, for increasing the flow of an oil well in a limestone formation by treating it with acid, such as hydrochloric acid. The Grebe & Sanford specifications declare that "The acid has the effect of attacking and dissolving the rock, thereby enlarging the cavity at the bottom of the well, or the channels and pores in the rock through which oil flows to the well," but state that in actual practice this method has never been generally adopted, due to the fact that the acid attacks and damages the metallic casing and the pump tubes.

The claim is then made that the patent presents an improved method of using the hydrochloric acid treatment, which consists of adding to the acid a small amount of a substance capable of inhibiting attack of the acid on metal surfaces with which it comes in contact. For the inhibiting agent the use of an arsenic compound of from one to five per cent, based on the weight of the solution, is recommended. Numerous other inhibitors are also suggested. The recommended strength of the aqueous hydrochloric acid solution is between about five per cent and about twenty per cent, preferably between ten and fifteen per cent.

Claims 1, 5, 7, 8, and 9 are in suit. Claim 8 is typical and reads as follows:

"8. The method for increasing the output of an oil well which comprises charging into the pump tube a quantity of a 5 to 20 per cent hydrochloric acid solution containing a relatively small amount of a corrosion inhibitor, expelling the acid from the tube into the bore of the well by applying pressure thereon, permitting the acid to act upon the rock formation surrounding the well cavity and withdrawing the spent acid."

The District Court found that the appellant in 1932 was the first to treat the producing formation of a limestone well with inhibited hydrochloric acid charged into the well through the pump tube, and

that the appellee inhibits the hydrochloric acid used in its business of treating wells by the presence in the acid of dissolved lead and copper. However, the District Court dismissed the bill upon the ground that in adding a corrosion inhibitor to hydrochloric acid for use in acidizing wells, Grebe & Sanford were merely making use of the well-known qualities of such corrosion inhibitors without obtaining any new or unexpected result, and without creating any new process of acidizing a limestone formation. The court found that the addition of the corrosion inhibitor, in view of the prior art, required no more than the ordinary skill of the calling and involved no patentable invention.

The appellee's acid in its initial state has no inhibitor added to it. It is transported to the wells in steel containers on the inside of which a number of lead sheets are brazed. A battery action is thereby set up and minute quantities of copper, lead and iron chlorides, are deposited on the inside of the steel container, forming a protective coating. An acid solution of about fifteen per cent concentration is used by the appellee, and when the acid is inserted in the tubing of the well, the copper, lead and iron chlorides therein act to reduce corrosion from forty to sixty per cent. Although no chemical action is present between the hydrochloric acid and the arsenic compounds which are used by appellant as inhibitors, as is the case in appellee's process, the District Court found, we think correctly, that appellee infringes if the parent is valid. There is no substantial difference between the results secured by the appellee and that secured by appellant, and the method used is essentially the same.

The patent in suit was involved in a case heard in the Circuit Court of Appeals for the Tenth Circuit, Dow Chemical Co. v. Williams Bros. Well Treating Corp., 81 F.2d 495. There the patent was held valid, and appellant relies largely upon that decision to support its contention that the decree must be reversed. The District Court found in the instant case that the method of acidizing disclosed in the Frasch patent, 556,669 (1896), was successfully used on a commercial basis in the acidizing of wells near Lima, Ohio, in 1895; that inhibited hydrochloric acid was used by the Gypsy Oil Company in 1928 to remove calcareous scale from pipe and equipment in certain wells, and that this use was reduced by the Gypsy Oil Company to successful commercial practice. The court found that many wells have been acidized successfully with commercial hydrochloric acid using no corrosion inhibitor both before and since the patent issued to Grebe & Sanford, and that during a great majority of the usual commercial acidizing operations the rate of corrosion of raw commercial hydrochloric acid upon steel does not result in any material damage to the well pipe or equipment. All of these findings of fact are challenged by appellant on the ground that the Court of Appeals of the Tenth Circuit made diametrically opposite conclusions in the Williams Bros. case, supra, and that they are not supported by the evidence.

We think that each of these findings of fact is supported by substantial evidence. While the court in the Williams Bros. case decided that the Frasch method was cumbersome and impracticable, and that an alleged prior use by the Gypsy Oil Company in 1928 was no more than an unsuccessful and abandoned experiment, that court did not have the advantage of testimony presented in the instant case. We agree with the District Court that the evidence herein compels a different conclusion.

With reference to the use of the Frasch method, it clearly appears from the evidence, none of which was presented in the Williams Bros. case, that the Frasch method was used extensively in the oil fields of Lima, Ohio, in 1895 and 1896. The gist of Frasch's invention was the application of hydrochloric acid to limestone formations for the purpose of opening and broadening the channels in the rock through which the oil would run into the well. Frasch calls his invention "a method of increasing the flow of oil wells in limestone formations." He especially recommends the use of hydrochloric or muriatic acid to open the channels in the limestone because these acids dissolve the rock itself and the product of the chemical reaction does not remain to obstruct the passages.

Frasch recognized that hydrochloric acid would corrode the equipment. He not only suggested the use of a packer around the tubing, which was criticized in the Williams Bros. case, but also the use of enameled or lead-lined pipe to conduct the acid into the well, and the use of an alkaline liquid to neutralize the acid after it had performed its function, thus eliminating corrosion. None of the nine claims

of Frasch mentions the packer or specifies any means of reducing corrosion. Frasch was concerned only incidentally with this problem. His essential conception was to attack the limestone rock with a chemical reagent which would disintegrate the rock, increase its porosity, and open the channels into the pay. In this he fully succeeded.

The use of Frasch's invention increased the production of oil wells in limestone formations by large percentages. The increase in production of one well in the Lima field, due to use of this method in 1895, was three hundred per cent, and was stated to be permanent, and a number of other wells in that field, after being treated with hydrochloric acid under this method, showed a remarkable increase. In June, 1932, the Oil Makers Company began to acidize wells in Michigan and treated many wells successfully with uninhibited hydrochloric acid. The superintendent of the McClanahan Oil & Gas Company testified that a number of these operations resulted in "a nice increase" of oil, most of them without damage to the equipment. The Oil Makers Company was compelled to suspend business, not as appellant urges, because of lack of success, but because of lack of capital, the falling price of oil, and letters written by appellant threatening to sue the company and its customers for "use of acid in any manner" which would infringe the patents. The Oil Makers Company construed this to mean that it would be sued if it used raw acid, that is acid containing no inhibitor.

The Chemical Process Company since 1932 has successfully acidized 15,000 wells, serving most of the major oil companies and using in almost all instances raw acid. Thus it has been employing the Frasch method.

The Gypsy Oil Company prior use of 1928 and 1929, found by the District Court to anticipate the patent in suit, although held in the Williams Bros. case [81 F.2d 499] to be an "unsuccessful and abandoned experiment," appears from the evidence here to have been a complete "scientific success." It involved the use of inhibited hydrochloric acid to clean scale from well equipment in sandstone formation. Appellant's endeavor to establish that this prior use is not material because it was employed in sandstone formation instead of in limestone has no weight, for concededly appellant's invention, if there is invention, relates solely to the protection

of the well equipment from corrosion by the acid, and not to the action of the acid upon the rock. This was the relevant part of the problem presented in the treatment of these wells in sandstone formation, and hence if the prior use is established it anticipates.

In 1928, the Mellon Institute was requested to advise the Gypsy Oil Company, a division of Gulf Oil Co., as to the proper solvent for dissolving the scale which formed inside the tubing of certain wells and impeded their operation. Dr. Blaine B. Wescott made a report on behalf of the Institute, suggesting the use of hydrochloric acid as solvent. Recognizing that some of the metal of the tubing, casing and sucker-rods would be lost in the acid, the report proposes the use of an inhibitor such as is employed in the steel mills, and suggests Rodine #2 for the purpose. The William Berryhill well No. 8 was treated by this method in 1928, with complete success, and similar successful treatments of other wells followed into 1931. The treatment of the Anderson well No. 3, stressed by appellant, involved an attempt not to remove scale but to prevent its formation by a treatment not recommended in the report, and was not successful. While the Gypsy Oil Company discontinued these treatments, due to the very low price of oil at that time, the company felt that it was accomplishing the results desired, and the treatments can not be dismissed as an "experiment" or as being "abandoned." The practicability of the method recommended by the Institute was completely established and its utility demonstrated over a sufficient period to constitute a prior use. Cf. Corona Cord Tire Co. v. Dovan Chemical Corp., 267 U.S. 358, 384, 48 S.Ct. 380, 72 L.Ed. 610. Moreover, the testimony of Dr. Wescott, which was not before the Tenth Circuit, shows that the use of inhibitors to protect metal from hydrochloric acid was well understood at that time so that in that respect no problem whatever was presented for solution. The use of the inhibitor in conjunction with the acid was suggested by the Institute as a matter of course.

The record is replete with testimony not presented in the Williams Bros. case, to the effect that the use of an inhibitor is not necessary to the successful acidization of an oil well. One expert states that the inhibitor cost more than the damage to the equipment would have amounted to had

raw acid been used. Since the adjudication of the Williams Bros. case in 1936, the Gypsy Oil Company has treated all of its wells with uninhibited acid and the record of the Chemical Process Company is cogent evidence in support of the finding of fact of the District Court upon this point.

Under the findings of fact, therefore, a very narrow question is presented upon the issue of validity. The Tenth Circuit considered that the question of patentability of Grebe & Sanford revolved around the problem of the increase in the flow of the well. It stated in effect that this process increased the ultimate recovery from the sand, and that the production of more oil in a more efficient way is accomplished by the patent in suit. It concluded that the acid without the inhibitor had proven to be a failure and held that Grebe & Sanford "conceived the idea of dissolving the formation in which nature stored its oil." But the Grebe and Sanford patent itself recognizes the fact that this idea was conceived by Frasch, and that increase in production was obtained by the Frasch method; and in the instant case appellant's expert stated that the inhibitors "would have no effect on the acid in connection with its reaction upon limestone," and that the result "would be limited apparently to the equipment, rather than to the well itself." Hence under appellant's own testimony the increase in the flow of the well is not the problem claimed to be solved, for since the addition of the corrosion inhibitor to the hydrochloric acid does not affect the action of the acid upon the limestone, no new process is created. The object of the invention, as stated by appellant's expert, is simply to protect the equipment from the hydrochloric acid. The single question is whether the conception of adding a corrosion inhibitor to hydrochloric acid for use in acidizing wells in order to reduce corrosion requires anything more than the ordinary skill of the calling or involves any patentable invention.

■ All the elements of the claimed combination were old. It was old to increase production by the use of hydrochloric acid under pressure. The use of this very process was suggested to Grebe & Sanford by the Pure Oil Company prior to the issuance of the patent in suit and was not original with them. It was old to use inhibitors with hydrochloric, phosphoric, and other pickling acids to reduce corrosion on iron and steel. Cf. Patent to Beneker, 914,916 (1909); Patent to Holmes, 1,470,225 (1923); Patent to Gravell, 1,678,775 (1925). The use of inhibitors other than those based on arsenic is shown in Fischer & Stegemeyer, 1,736,-282 (1929); Rhodes, 1,746,677 (1930); Vignos, 1,750,651 (1930); Harrison, 1,-766,902 (1930). Scientific publications, describing the use of inhibitors, are in evidence, dating from 1845. The only novel element here was that appellant first charged the inhibited hydrochloric acid into the limestone formation through the pump tube. The application of these two old principles to an oil well and the obvious step of conducting the acid through the pump tubing did not constitute invention, in view of the prior art as presented in this case. All that was required was expected mechanical skill. No new result was achieved. Cf. Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U.S. 426, 433, 434, 38 S.Ct. 547, 62 L.Ed. 1196.

■ While appellant attacks the specific findings of the District Court which hold that the method of increasing the flow in the oil well was old and widely known, it relies here, as it did in the Williams Bros. case, upon commercial success to establish invention. The extensive commercial success of appellant is at least partly referable to the phenomenal growth of the demand for oil during the last few decades, and to appellant's powerful business organization. But patent monopoly is granted not for commercial success, but for novelty and invention. Commercial success of itself does not create invention. Cf. Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 55 S.Ct. 449, 79 L.Ed. 997. Commercial success is only a factor entering into the decision, when the question of invention is open to doubt. Bulldog Electric Products Co. v. General Electric Co., 4 Cir., 105 F.2d 466. Here the question is not open to doubt, for even the alleged meritorious results appear not to have been demonstrated. When invention does not exist commercial success is immaterial. Grosjean v. Panther-Panco Rubber Co., 1 Cir., 113 F.2d 252; Evr-Klean Seat Pad Co. v. Firestone Tire & Rubber Co., 8 Cir., 118 F.2d 600; Rid-Jid Products, Inc., v. Rich Pump & Ladder Co., 6 Cir., 103 F.2d 574.

The decree is affirmed.