## DETROIT GASKET & MFG. CO. v. WOLVERINE FABRICATING & MFG. CO., Inc.

### No. 3612.

District Court, E. D. Michigan, S. D.

Dec. 23, 1943.

John J. Darby, of Washington, D. C. (Cook, Smith, Jacobs & Beake, of Detroit, Mich., of counsel), for plaintiff.

Whittemore, Hulbert & Belknap, of Detroit, Mich., for defendant.

LEDERLE, District Judge.

1. This is a declaratory judgment suit involving all of the claims of the Kreuz patent No. 2,240,789. An actual controversy exists between the parties as to the validity of this patent and plaintiff has admitted that if the patent is valid it has infringed all of the claims. Defendant filed a counterclaim charging infringement of all the claims of the patent and asked for an injunction, profits, damages and costs.

2. The patent discloses a gasket and sheet packing material from which gaskets may be made. A gasket is a device designed to be inserted between two parts of a machine for the purpose of forming a tight joint and thus preventing leakage. The device consists of a vulcanized fiber gasket having a coating of synthetic rubber applied to both surfaces. The disclosure is directed specifically to flat gaskets which may be stamped out of the gasket material. Vulcanized fiber was invented in 1859 and had been used for gasket material many years prior to the date of application for this patent. It was well known that vulcanized fiber was desirable material to be used in making gaskets for the reason that it is inherently oil proof, has hard and unyielding surfaces and has exceptional strength, flexibility and durability. It is substantially incompressible and is especially suitable where a precise alignment needs to be maintained between two adjacent clamped metal members. Its disadvantage is that it is so hard and unyielding that it does not provide a satisfactory seal and permits leakage between the surface of the gasket and the adjacent clamping surface.

Mechanics skilled in the use of gaskets with metal faces had the same difficulties of preventing leakage between the surface of the gasket and the adjacent metal surfaces. It had long been a common practice to apply a coat of shellac or some other sealing material to the surface of such metal gaskets before they were installed. Kreuz was an employee of plaintiff and he learned from one of plaintiff's customers that the vulcanized fiber gaskets it had furnished to this customer were satisfactory in all respects except that they permitted leakage between the surface of the gasket and the clamping surfaces of the machine. Kreuz had had some experience in the rubber industry and in June, 1938, suggested that

the surface of the vulcanized fiber gaskets be coated with synthetic rubber. Synthetic rubber is a thermoplastic which is highly resistant to oil and for these reasons it is superior to natural rubber. The synthetic rubber performs the same functions as was formerly performed by shellac, natural rubber, or other sealing materials. In selecting synthetic rubber he was merely exercising the skill of a mechanic by choosing the best material available for the purpose intended.

There is no question about the utility of the vulcanized fiber gasket coated with synthetic rubber and plaintiff has admitted that it started to manufacture this type of gasket in March, 1941. Both plaintiff and defendant have sold large numbers of these gaskets and there can be no question about the commercial success of this product.

3. Stripped of its unnecessary language the specification of the Kreuz patent discloses that the concept which he claimed to be an invention consisted of the idea that advantage could be taken of all of the inherent virtues of a vulcanized fiber gasket if a thin layer of synthetic rubber is inserted between the surfaces of the gasket and the adjacent clamping surfaces between which it is used before it is installed. This concept is set forth in defendant's brief as follows:

" 'To obtain the advantages of chemically vulcanized fiber as a gasket material, Kreuz applies a seating coat of synthetic rubber to the opposite exposed surfaces of the chemically vulcanized fiber "to greatly enhance the seating properties of the surface of such fibre sheet." (11. ·41-43, col. 2, p. 1) Synthetic rubber is used as the seating coat because, in addition to its inherent seating qualities, it is practically oil proof. (1. 9, col. 1, p. 2)

" 'Kreuz teaches that his prime object is to successfully utilize chemically vulcanized fiber for gaskets, for he states: "By such an arrangement it is possible to more effectively and successfully utilize the desirable characteristics of a base sheet of the chemically vulcanized fibre sheet for gaskets and similar purposes." (11. 45-49, col. 2, p. 1)

" 'He simply uses a sufficient coating of synthetic rubber for the sole purpose of providing a good sealing seat, for he states: "The base sheet 1 serves as a gasket material which does not require protection, and the coatings 3 on the opposite side surfaces of the base sheet serve to provide a good sealing seat against any abutting solid surface." (11. 25–30, col. 1, p. 2)

" 'Kreuz's invention is directed specifically to a flat gasket to be installed between adjacent solid surfaces to be clamped together. This is specifically disclosed in Fig. 3 of the drawings and is stressed all through the disclosure.' "

4. Defendant selected claim 3 of the patent as illustrating this inventive concept. Claim 3 reads as follows: "A gasket comprising, a base sheet of chemically vulcanized fiber, said sheet being substantially incompressible and being resistant to deterioration by oil or the like fluids, and a relatively thin coating of synthetic rubber material applied on the seating faces of · said gasket, said synthetic rubber material being resistant to deterioration by oil or the like fluids."

In its brief defendant says: " 'It is submitted that Claim 3 could about as well have defined the invention as "A gasket comprising a base sheet of chemically vulcanized fiber, and a relatively thin coating of synthetic rubber material applied on the seating faces of said gasket." ' "

This is equivalent to saying that a thin coating of synthetic rubber is inserted between the seating faces of the gasket and any abutting solid surface and it is applied prior to the installation of the gasket. In this way all of the desirable features of the vulcanized fiber gasket can be utilized and at the same time the joint can be completely sealed.

It is perfectly obvious that there is no interaction between the vulcanized fiber and the synthetic rubber. Each material performs an independent function. As pointed out in a communication from Kreuz's patent attorney to the patent office, dated February 26, 1940: "The seating material (synthetic rubber) is coated upon and not impregnated into the base sheet. The base sheet of vulcanized fiber is so hard and incompressible that the seating material does not penetrate it. * * * Applicant's packing provides good seating properties on the contacting surfaces, and the durable qualities of the hard vulcanized fiber sheet are made available for all packing purposes where a sheet packing is required. Gaskets cut from applicant's sheet packing material expose the raw uncoated edge of the base sheet to the fluid without causing deterioration."

5. It is plaintiff's claim that Kruez's patent is invalid when considered in the light of the disclosure of the Emanuel patent, No. 2,076,401, and certain prior uses which were established beyond a reasonable doubt. The Emanuel patent was not before the patent office at the time the patent to Kreuz was allowed and of course the patent office had no knowledge of the prior uses established in this case. The Emanuel patent, which was issued April 6, 1937, based upon an application filed September 28, 1932, specifically refers to a combination of vulcanized fiber and a gelatinous binder resistant to organic solvents which will be relatively compressible and which will deform readily under pressure, and it points out: "This makes it an ideal material for gasketing purposes wherein the surfaces to be gasketed are irregular or rough."

The record discloses that one Harold M. Pyle filed an application for a patent on February 28, 1938, No. 192,972, comprised of a body portion of fibrous material covered with an adherent film coating which will conform to the surfaces of the structure in order to effectively seal the joint and Thiokol, the preferred material of the Kreuz patent, is specifically mentioned as a material suitable for coating purposes. It was definitely established that gaskets made in accordance with the Pyle disclosure had been in public use early in 1938. It was likewise established that as early as 1935 the Sprague Specialties Co. of North Adams, Mass., had manufactured and sold gasket material consisting of a base of vulcanized fiber and a thinner layer of rubber composition which was oil resistant The only substantial difference between the Sprague material and the Kreuz material is that in the Sprague material only one side was coated whereas in the Kreuz material both sides were coated. It was likewise established that the Synthane Corporation of Oaks, Pa., had sometime prior to 1938 manufactured gaskets having a hard central core of bakelite coated with relatively thin sheets of rubber for the purpose of providing a seating or sealing surface. Bakelite has substantially the same characteristics as vulcanized fiber and Thiokol or synthetic rubber has substantially the same characteristics as natural rubber except that Thiokol is resistant to oils and natural rubber is not.

The only difference between the prior art practices and those outlined in the patent in suit consists of a substitution of materials. This substitution of materials is well within the skill that would be expected of a mechanic who understood the inherent characteristics of vulcanized fiber and synthetic rubber and did not amount to an invention.

6. In its brief plaintiff suggests that the disclosures of the Kreuz patent were not for a combination directed to an article as claimed by defendant but is a mere aggregation. This point is not stressed but it seems to me that it has great merit. It is obvious that it would make no difference whether the Thiokol or other synthetic rubber was first applied to the gasket or whether it was applied to the two surfaces to be clamped together. In fact all of the functions that are performed by the Thiokol coating are independent of the functions performed by the vulcanized fiber. If it be conceded that the patent does disclose a combination the result achieved is not a product of the combination but a mere aggregation of the several results each the complete product of one of the combined elements. There is no joint action between the vulcanized fiber and the synthetic rubber and each of these elements performed only the same function in the same way that these functions were performed in prior art devices. It is true that these gaskets performed the peculiar function for which they were designed better than those which preceded them but this was because by bringing the two together it was possible to combine the good qualities of vulcanized fiber with the good qualities of the Thiokol. The result achieved was not due to the joint and cooperating action of the two elements but in fact is a mere adding together of separate contributions. This is not invention.

## Conclusions of Law

1. This is an action arising under the patent laws of the United States and this court has jurisdiction to hear and determine the issues raised by the complaint and counterclaim. 28 U.S.C.A. § 41(7).

2. The usual presumption of validity arising from the granting of the patent in suit is weakened in this case because the board of appeals of the patent office did not have its attention directed to the most pertinent prior art. France Mfg. Co. v. Jefferson Electric Co., 6 Cir., 106 F.2d 605.

3. When the validity of a patent is challenged it becomes the duty of the court "* * * to ascertain just what it was that (the patentee) did that had, not, in essence, been done before, and whether it denoted invention or whether it was within the expected routine skill of those laboring in the art." Seiberling Rubber Co. v. I. T. S. Co., 6 Cir., 134 F.2d 871, 873. A valid patent may issue for a new combination even though all of the elements be old, but this is true only where the quality of invention is exercised to bring about a new mode of operation and produces a new and useful result. All that Kreuz did was to utilize the well understood characteristics of vulcanized fiber and synthetic rubber. This was but a mere carrying forward of a new and more extended application of the prior art. It may be conceded that this improvement was an advance but it did not amount to invention. Seiberling Rubber Co. v. I. T. S. Co., supra; Kemper-Thomas Co. v. J. P. Gordon, 6 Cir., 67 F.2d 478. All of the claims of the Kreuz patent No. 2,240,789 are invalid for want of invention.

4. Gaskets made in accordance with the patent in suit have achieved a degree of commercial success but this is important only if the question of invention is open to doubt. When invention does not exist commercial success is immaterial. Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 6 Cir., 139 F.2d 473, decided December 17, 1943.

5. The language of Judge Parker in the case of Goldman v. Polan, 4 Cir., 93 F.2d 797, 799, is particularly appropriate to the problem presented in this case. "It is perfectly clear that all that plaintiff did was to use a material, superior for the purpose which he had in mind, in place of the fabric customarily used for covering umbrellas. Or, to look at the matter from another angle, he merely applied the oiled silk developed by another person to a new use but one analogous to the uses theretofore made of it. If the use of the oiled silk with the umbrella frame be conceived of as a combination, the answer to the claim of invention is that no new result was attained which was the joint product of the combination, but each of the old elements worked out the old results in the old way. The oiled silk offered the same resistance to water on the umbrella that it would have offered as a cape; and the umbrella frame supported it in the same way that it would have supported any other covering. If plaintiff could obtain a patent on the use of the fabric as a covering for umbrellas, we perceive no reason why he could not have had patents covering its use for shower bath curtains, or capes; and any new fabric, on this principle, whether patentable or not, would be subject to as many different patents as uses could be found for it."

The inventor of Thiokol was entitled to have his product reach as wide a use as possible. If the Kreuz patent can be sustained, then every person who finds a new use for Thiokol could likewise secure a patent, and the inventor of the material would thus be limited to the uses that he suggested in the original patent. This construction of the patent law would not "promote the progress of science and useful arts," as contemplated by the Constitution (art. 1, § 8, cl. 8), but would retard their development. It would likewise postpone indefinitely the time when the public could begin to make unrestricted use of the disclosures of the original patent.

The facts of this case are comparable to the facts in the case of Dow Chemical Co. v. Halliburton Oil Well Cementing Co., supra [139 F.2d 477]. The language of the opinion in that case when applied to the facts in this case would read as follows: "All of the elements of the claimed combination were old. It was old to use vulcanized fiber for gasket material. It was old to use synthetic rubber as a seating or sealing material in installing gaskets. The application of these two old principles to a gasket and the obvious step of coating the vulcanized fiber with the synthetic rubber prior to the installation of the gasket did not constitute invention in view of the prior art as presented in this case. All that was required was expected mechanical skill."

6. In its brief defendant makes this assertion: "Courts have also held that an admitted infringer cannot attack the validity of a patent which it has usurped on the ground that the invention was an obvious one." Judge Simons has already answered this contention in United States Gypsum Co. v. Consolidated Exp. Met. Co., 6 Cir., 130 F.2d 888, 889 (certiorari denied 317 U.S. 698, 63 S.Ct. 441), in the following language: "It has been held in adjudications without number, that one who appropriates the teachings of a patent may not deny the utility of the invention. This

is, of course, both reasonable and logical. It does not follow, however, that one who is foreclosed from denying the usefulness of a concept is likewise foreclosed from questioning its novelty or the exercise of invention in the development of product, method, or machine. It is illogical to base a presumption of patent validity upon the unauthorized adoption of patent disclosures, since all controversies as to validity arise through infringement, and may not otherwise arise. One who reproduces a patented device, proclaims to the world his disbelief in the validity of the patent, his purpose not to be circumscribed by it, and invites a suit for infringement so that validity may be adjudged, and the closer the reproduction the plainer is his challenge to validity. It is only by becoming an infringer that one gains opportunity to assail a patent in his own interest and that of the public."

7. Having found that all of the claims of the patent are invalid for want of invention, it follows that a judgment must be entered dismissing defendant's counterclaim and enjoining defendant from prosecuting any civil action charging infringement of Kreuz patent No. 2,240,789 against plaintiff, its agents, vendees, or others in privity with it and for costs to be taxed in favor of plaintiff.