226

## A. O. SMITH CORPORATION v. LINCOLN ELECTRIC CO.
### No. 6863.

Circuit Court of Appeals, Sixth Circuit.
March 4, 1936.

George I. Haight, of Chicago, Ill., and A. C. Paul, of Minneapolis, Minn. (E. A. Andrus, of Milwaukee, Wis., M. K. Hobbs, of Chicago, Ill., and Maxwell & Ramsey, of Cincinnati, Ohio, on the brief), for appellant.

Wallace R. Lane, of Chicago, Ill., and John F. Oberlin, of Cleveland, Ohio (Clarence J. Loftus, of Chicago, Ill., and William B. Stewart, of Cleveland, Ohio, on the brief), for appellee.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

Appeal from a decree confirming the report of a special master and dismissing a bill of complaint for patent infringement. The patents in suit are Smith, No. 1,301,331 (application filed 1918; issued 1919), and R. Stresau, No. 1,754,063 (application filed 1925; issued 1930). Claims 1, 4, 7, 14, 15 and 16 of the former and all claims of the latter are involved. Both patents relate to claimed improvements in metallic weldrods for use in electric arc-welding. Claims 1, 4 and 7 of the Smith patent were held valid but not infringed. Claims 14, 15 and 16 of the Smith patent and all claims of the Stresau patent were held invalid on the ground that they were clearly anticipated in the prior art. Appellant challenges all of these conclusions, and also challenges the limitation put upon claims 1, 4 and 7 of the Smith patent, which was held to be an improvement patent only.

Prior to the invention of covered electrodes, weldrods were bare wires which when melted to form the weld metal absorbed nitrogen and oxygen from the air. These gases caused contamination of the

weld metal and rendered it porous and brittle. Weldrods were then devised provided with a covering of mineral substances, which in decomposing formed a blanket of slag protecting the weld metal from contact with the air. While these electrodes produced welds superior to those obtained with bare wire rods, some oxids were still present, and the problem of producing a weld metal with properties substantially equal to those of the parts to be joined was not solved. The contention is made that under appellant's patents for the first time covered weldrods were produced which employ combustible cellulosic material in the covering, thus protecting the weld metal by the formation of reducing gases, and that these were the first covered weldrods of any kind which produced weld joints unimpaired by the deleterious effects of oxygen and nitrogen.[1]

The questions presented are, first, whether the patents in suit are valid, and second, if so, whether they are infringed.

Claims 1, 4 and 7 of the Smith patent read as follows:

"1. An electrode for use in arc-welding, consisting of a metallic rod having thereon a covering of paper treated with a heat resisting compound."

"4. An electrode for use in arc-welding, consisting of a metallic rod provided with a chemically treated covering of hardened paper, substantially as described."

"7. An electrode for use in arc-welding, consisting of a metallic rod having thereon a hardened covering of paper treated with sodium silicate."

These claims, if strictly construed, cover only weldrods wrapped with hardened paper. It is conceded that paper saturated with sodium silicate baked as described in the patent and decomposed in combustion forms reducing gases which protect the weld metal. It is the broad claim of appellant that since paper is cellulose, that is, a carbohydrate, constituting the chief part of the solid framework of plants, ordinary wood, linen, paper, rayon, etc., the term "paper" covers every kind of cellulose, and the use of any kind of cel-

lulose, together with sodium silicate, in any weldrod covering, infringes the patent. Appellee's weldrods are covered with cellulosic substances saturated with sodium silicate in combination with other ingredients, but they are not wrapped with paper. If appellant's patent is a pioneer patent, it is entitled to hold as infringements all known equivalents of the elements of the claims which perform the same office in substantially the same way. Clough v. Gilbert & Barker Mfg. Co., 106 U.S. 166, 1 S.Ct. 188, 27 L.Ed. 134; Morley Sewing Machine Co. v. Lancaster, 129 U.S. 263, 9 S.Ct. 299, 32 L.Ed. 715; Hildreth v. Mastoras, 257 U.S. 27, 36, 42 S.Ct. 20, 66 L.Ed. 112.

The contentions as to the invalidity of the Smith patent are (1) that the patent fails to particularly point out and distinctly claim the invention now asserted, namely, the production of a reducing envelop of vapor protecting the weld metal; (2) that each of the claims is clearly anticipated by the prior art, and (3) that the invention of the Smith claims is completely disclosed in the Cravens patents, Nos. 1,260,875, and 1,260,989 (1918).

The contention as to indefiniteness has little merit. The specifications and claims of the Smith patent clearly describe the structure. It is not necessary to the validity of the patent that the inventor knew the scientific principles involved in the invention. DeForest Radio Co. v. General Electric Co., 283 U.S. 664, 686, 51 S.Ct. 563, 75 L.Ed. 1339; Diamond Rubber Co. of N.Y. v. Consolidated Rubber Tire Co., 220 U.S. 428, 435, 436, 31 S.Ct. 444, 55 L.Ed. 527. The inventor is entitled to the full scope of his patent, the proper function of which, in an article patent, is to describe the structure. Jackson Fence Co. v. Peerless Wire Fence Co., 228 F. 691, 696 (C.C.A.6).

Claims 1, 4 and 7 of the Smith patent are not anticipated by the patents upon which appellee relies. The Irvine patent, No. 1,261,395 (1918), discloses a weldrod wrapped with asbestos paper and treated with iron oxid, sodium carbonate and sodium silicate. Asbestos paper is not cellulose. It is a mineral, being a form of amphibole,

---

[1] While Smith said (specifications patent No. 1,301,331) that "The coating of slag * * * is not essential," appellant's own evidence shows that the following percentages of slag-forming materials exist in the rods covered by the suit: 40.44% in Smith; 53.65% in Stresau; 59.39% in Lincoln Fleetweld (old); 56.34% in Lincoln Fleetweld (new). The element of slag-forming material in the cover hence does not greatly differentiate these rods. Neither the Smith nor the Stresau patent is restricted to coverings which do not produce slag.

that is, a silicate of calcium or magnesium with one or more other metals, such as manganese or iron, in combination. It does not form a reducing vapor. The same statement applies to the Strohmenger patent No. 1,073,543 (1913), in which the rod is covered with asbestos spun in the form of yarn, smeared with sodium or aluminum silicate. The Jones patent, No. 1,312,254 (1919), also discloses asbestos yarn in the covering. The Hollup patent, No. 1,466,587 (1923), uses silicate of soda and silica flour. The Kjellberg patent, No. 948,764 (1910), describes a weldrod with a covering of chalk or magnesia together with potassium as a binder. The use of sodium silicate was not new with Smith. It was disclosed in Strohmenger, Cravens, Kjellberg's second patent, No. 1,115,317, Irvine, Hollup and Jones. But it is in the combination of paper with sodium silicate that the novelty of the Smith patent consists, and for the purpose of this suit the determining factor is the meaning to be given under the claims to "paper."

Claims 14, 15 and 16 read as follows:

"14. An electrode for use in arc-welding, consisting of a metallic rod provided with a hardened covering conserving a residuum of moisture.

"15. An electrode for use in arc-welding, consisting of a metallic rod provided with a coating or shell acting to retard the heating of said rod by the arc.

"16. An electrode for arc-welding, consisting of a metallic rod having a coating containing a heat dissipating or dispelling medium."

These claims were held to be anticipated by the patents above named. Under the testimony of the experts for both parties, they are so anticipated unless, as urged by appellant, the claims are to be read in the light of the specifications. The rod described in every one of the prior art patents relied on discloses, as set forth in these respective claims of Smith, a hardened covering conserving a residuum of moisture, a hardened covering or shell, acting to retard the heating of the rod by the arc, and a coating containing a heat-dissipating and dispelling medium. These claims must, however, be read and construed in the light of the specifications. Westinghouse Electric & Mfg. Co. v. Quackenbush, 53 F.(2d) 632, 634 (C.C.A. 6); Sun Ray Gas Corp. v. Bellows-Claude Neon Co., 49 F.(2d) 886 (C.C.A.6). So read, they disclose a rod covered with paper. The prior art patents do not use paper, and hence do not anticipate. While the claims are limited, together with claims 1, 4 and 7, as held below, they are not invalid.

The use of the Cravens patents existed to a slight degree. Weldrods were produced, shipped and marketed under this patent. However, an essential ingredient thereof was plaster of Paris. This left sulphur in the weld metal, which resulted in oxidation. The Quasi-arc weldrods which met with considerable commercial success had a covering consisting partially of blue asbestos and cotton. This rod did not create a reducing envelop. Neither of these weldrods employed substantially the same means and produced substantially the same result as Smith. Hence they do not invalidate the claims in suit.

Appellee also asserts that the Cravens patents constitute a complete anticipation of Smith's claims. Their specifications disclose a process according to which "the arc is surrounded or inclosed by a nonoxidizing, insulating gaseous vapor envelop. This envelop confines the arc, prevents lateral diffusion and dissipation of heat." It "prevents access of air to the metal vapors of the arc and, the protecting envelop itself being non-oxidizing, the molten metal and metal vapors which enter into the brazing or welding are maintained free from oxids so that a clean weld or braze free from these impurities is obtained. This gaseous inclosing envelop may be formed by coating the movable electrode with insulating material which is adapted when heated by the arc to form a non-oxidizing insulating vapor about the arc between the metal of the electrode and the work." It is suggested in the specifications that the coating of the electrode may comprise a winding of cotton cord saturated with powdered plaster of Paris and sodium silicate, which serves as a binder added. The cotton cord serves as a carrier for the plaster of Paris and sodium silicate and is consumed while the plaster of Paris and silicate are vaporized to form the envelop. The appellant contends that the term "non-oxidizing" is not equivalent to reducing, but reading the term in the light of the specifications already quoted, it is evident that Cravens disclosed the conception of creating a protecting gaseous envelop to maintain the weld metal free from oxids. Since cotton cord is cellulose, he also suggested the use of cellulosic material together with sodium silicate.

The general aim disclosed in the Cravens patents was not new. The problem of preventing access of the air to the weld metal had been set forth in a number of patents in the prior art. Strohmenger, No. 1,041,525 (1912), described his process as acting as a reducing rather than an oxidizing agent, so as to prevent oxidation of the metal. Kjellberg suggested the reducing effect, and in the second patent his teaching was that reducing gases could be developed in the sleeve of slag by adding more carbon.[2] Jones, No. 1,441,685 (1923), and Hollup had set forth the desirability of preventing access to the air. Cravens fully outlined the conception of the "shielded arc."

The Cravens claims do not specify the nature of the insulating material covering the rod, and if they disclose a means, it is that of the cotton cord, plaster of Paris and sodium silicate suggested in the specifications. The District Court found that the Cravens patent was inoperative, and hence does not anticipate. We agree with this conclusion. Weldrods were manufactured, shipped and sold under the Cravens patents and performed service more satisfactory than the bare rods. An expert who made the Cravens rods, with a minimum of plaster of Paris, said that the weld was a class one weld under the code specifications, and that the radiograph of the weld showed entire freedom from porosity. Rods made according to the Cravens method by appellant's expert employee, in which sixty-two per cent. of the covering consisted of plaster of Paris, deposited sulphur in the weld, and created oxidizing as well as reducing gases. In view of the deleterious effect of the plaster of Paris which Cravens considered an essential ingredient, we cannot escape the conclusion that the Cravens patent did not disclose the composition of matter which would achieve the result described in his claims. He did not disclose the means. The Cravens patents do not anticipate the claims of Smith.

The claims in suit are admittedly not infringed if the Smith patent relates only to an electrode covered with paper. Appellee's electrodes are covered not with paper, but with cellulosic material, slag-forming minerals, and other ingredients which play a functional part in the operation. In the Smith specifications the term used is "a sheet of paper," "a sheet or strip of paper," "a rectangular sheet of paper," "a plurality of narrow strips of paper," and at one point the appellant explains that "by covering the electrode wire with plain paper he has provided most economically a satisfactory medium for carrying the sodium silicate." The claims themselves disclose "a covering of paper," "a covering of hardened paper," "a hardened covering of paper."

The claims, if read literally, do not cover appellee's devices. Smith was specific in defining the material, form and structure of his rod. The paper had a substantial functional effect which Smith considered essential to his invention. His appraisal of the nature of his invention is of great importance. Wood v. Peerless Motor Car Corp., 75 F.(2d) 554 (C.C.A.6). He created an express limitation which pertained to the inventive step, and cannot now be permitted to depart from the plain meaning of the language he adopted, or to claim for such language a broad and generic construction. Directoplate Corp. v. Donaldson Lithographing Co., 51 F.(2d) 199 (C.C.A.6); D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 259 F. 236, 240 (C.C.A.6). These principles apply with even more emphatic force in this case, in view of the history of the patent litigation. D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., supra (C.C.A.) 259 F. 236, 241. The file wrapper shows that the first Smith application was rejected on Cravens for the reason that both cotton cord and paper are cellulose fibers. Appellant's solicitors answered this rejection by conceding that cotton cord and paper have several properties in common, but stated "it will be observed that none of the claims of this application is directed to such common properties." He urged that the

---

[2] "In cases where it is desirable to increase the percentage of carbon in the molten metal, or to develop reducing gases in the sleeve of slag during the welding operation, more carbon may be added to the paste, either as pulverized pure carbon, or as any other substance, as carbids, which in the arc develop hydrocarbons or carbon monoxid or other reducing gases.

"Should it be necessary to increase phosphorus and sulfur in the molten metal, the carbon may be added as charcoal made from the wood of foliferous trees, as it contains more of these substances than pine wood. Bone-charcoal in a pulverized state is also suitable for this purpose. Charcoal from pine wood is to be preferred if a pure material is required." (Kjellberg, No. 1,115,317.)

essential difference between Smith and Cravens was that the strips or sheets of paper would not unwind so readily as the cotton cord. The file wrapper confirms the conclusion above reached, that Smith deliberately limited his claim to a covering of paper in combination with silicate of soda. It is the claim, read in the light of the specifications, which measures the invention. Permutit Co. v. Graver Corp., 284 U. S. 52, 60, 52 S.Ct. 53, 76 L.Ed. 163; Sherwin-Williams Co. v. California Spray Chemical Co., 61 F.(2d) 297 (C.C.A.6); Bettendorf Co. v. Ohio Steel Foundry Co., 56 F.(2d) 777, 779 (C.C.A.6).

The decree must also be affirmed with reference to the Stresau patent.[3] The covering disclosed in this patent consists of a plastic compound made of finely granulated or comminuted cellulosic material saturated with sodium silicate. While more uniform results are claimed for this rod, the essential difference between this disclosure and that of Smith, No. 1,301,331, is that wood flour, wood pulp and sawdust are substituted for paper. Other prior publications and uses anticipate these claims. In the Smith patent No. 1,347,184, issued nearly five years before Stresau filed his application for the patent in suit, it was stated "I have found that a compound of clay and paper pulp or other cellulose fiber in suitable proportions is well adapted for the purpose." Langstroth and Wunder, No. 1,643,274, application filed May 23, 1923, states that the weldrod made under the second Smith patent had been extensively used with success. This patent is owned by appellant. Knoll, No. 1,354,664, issued four and a half years before the Stresau application was filed, discloses as the combustible substance in the covering "wood pulp." The Langstroth and Wunder patent calls for wood flour or meal as a base for the coating of the wire. It was stated by Stresau in the application for his patent that the patentable novelty existed in the use of wood flour instead of paper, paper pulp and wood pulp. The division of the basic substance in the covering into fine or granular form is a step that would readily and naturally be taken by one skilled in the art. A paste, that is plastic material, is exhibited in Kjellberg, No. 1,115,317, Boorne, No. 1,415,774 (1922), Mills, No. 1,376,963 (1921), Jones, No. 1,441,685 (1923). Extrusion as a means of causing the cover to adhere to the rod is exhibited in both the patents of Jones, in Smith, No. 1,347,184, and in Langstroth and Wunder. The Stresau patent offers no patentable novelty.

The decree of the District Court is affirmed.

Judge SIMONS concurs in the result.

---

[3] Typical claims of the Stresau patent are as follows:

"3. A metallic-arc weldrod constituted as a metal rod provided with a covering containing carbo-hydrate flour and an ingredient which retards combustion of said flour.

"4. A metal arc weldrod constituted as a metal rod having formed thereon a covering of finely comminuted cellulose material, said cellulose material having mixed therewith a binding and combustion retarding material."

"12. A metallic-arc weldrod constituted as a metallic wire provided with a gas-retaining coating or covering of wood flour mixed with silicate of soda."