**Gustav H. BOBERTZ, Jr., Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**Civ. A. No. 9399.**

United States District Court
E. D. Michigan, S. D.

Aug. 20, 1954.

Gregory S. Dolgorukov, Detroit, Mich., for plaintiff.

Arthur Raisch, Detroit, Mich., for defendant.

KOSCINSKI, District Judge.

Plaintiff sues for infringement of Patent No. 1,911,600 relating to improvement in automobile hoods. Defendant denies infringement and attacks validity of the patent for lack of novelty and patentable invention. Issue was joined, pretrial hearing had and a pre-trial order entered defining the issues, following which exhaustive discovery proceedings ensued by both parties.

Defendant filed motion for summary judgment under Rule 56, claiming absence of any genuine issue of material fact. Oral argument was had and all exhibits were made available to the court, including defendant's accused device. Briefs were filed fully covering the issues involved.

■ Ordinarily, courts are reluctant to decide important issues by summary judgment because of the lack of a record adequate to explain the issues of fact and law. Parke, Davis & Co. v. American Cyanamid Co., 6 Cir., 207 F.2d 571, citing Estepp v. Norfolk & W. Ry. Co., 6 Cir., 192 F.2d 889. In the latter, a personal injury case, and in Begnaud v. White, 6 Cir., 170 F.2d 323, a contract case, the court ruled that where a genuine issue of material fact exists summary judgment should not be granted, but in the Parke, Davis & Co. v. American Cyanamid Co. case, supra, a patent case, the court said, 207 F.2d at page 573, "but here the issues are clarified by extensive interrogatories filed by both parties and answered fully." Both parties in this case resorted to extensive discovery proceedings, filing of affidavits and exhibits, and making admissions. The court also had the benefit of the Patent Office file wrapper showing the history of the prosecution of this patent. The thoroughness of the pre-trial activities of both parties resulted in the elimination of any genuine issue of material fact in dispute. Under such circumstances it has been held that where no factual issues are present and where the patents and products involved are sufficiently simple to make expert testimony unnecessary, disposition under Rule 56, 28 U.S.C.A., is proper. Bridgeport Brass Co. v. Bostwick Laboratories, 2 Cir., 181 F.2d 315, 316, 319; Steigleder v. Eberhard Faber Pencil Co., 1 Cir., 176 F.2d 604, certiorari denied 338 U.S. 893, 70 S.Ct. 244, 94 L.Ed. 548; Vulcan Corp. v. International Shoe Machine Corp., D.C.D.Mass., 68 F.Supp. 990, affirmed, 1 Cir., 158 F.2d 520, certiorari denied, 330 U.S. 825, 67 S.Ct. 868, 91 L.Ed. 1275; Alex Lee Wallau, Inc., v. J. W. Landenberger & Co., D.C., 121 F. Supp. 555, 556. Defendant's accused hood is a partially transparent counterpart of the regular steel hood used in all of defendant's 1949 Oldsmobile "Rocket Engine" automobiles. Both hoods were available to the court for examination and comparison with plaintiff's hood of the claimed invention, which in Figure 2 of the patent drawings follows closely the automobile hood structure of defendant's 1932 Chevrolet automobile.

In Steigleder v. Eberhard Faber Pencil Co. case, supra [176 F.2d 604] the court in approving disposition of certain patent cases under Rule 56 said: "Where it is apparent that there is no genuine issue of fact bearing on infringement, and the structure and mode of operation of the accused device are such that they may be readily comprehended by the court, and compared with the invention described and claimed in the patent, without the need of technical explanation by the testimony of expert witnesses, then the court, if satisfied that there is no infringement, should give summary judgment for the defendant, instead of subjecting the parties to the expense of a trial." To the same effect Smith v. General Foundry Mach. Co., 4 Cir., 174 F.2d 147, certiorari denied 338 U.S. 869, 70 S.Ct. 144, 94 L.Ed. 533.

The five combination claims of the patent in suit are directed to an automobile hood made of transparent material, consisting of two vertical members, and either one or two horizontal members with a plurality of longitudinally extending transparent reinforcing means connecting the adjoining edges of said members to form a unitary structure there-

from, and securing means adapted to coact with a hold-down latch on the vehicle body to removably secure the hood to the vehicle body. The specifications state the object of the patent to be an invention to provide an automobile hood formed of transparent material, which permits full visibility of an engine of a motor vehicle at all times. Claim 1 is representative.[1] This transparent automobile hood would only temporarily replace the ordinary hood and was not intended for regular use in an automobile. The novelty of this invention is stated in the specifications to reside in the transparency of the top and sides of the automobile hood, for display or study purposes, enabling the observer full visibility of the engine.

The specifications also state that the automobile hood of the invention may be formed of a singe sheet of transparent material, or a plurality of independent sheets of such material, and while it is also stated in the specifications that the applicants for the patent do not desire to be limited to any type of hood fastening means, nor to a particular shape or configuration of such a hood, but desire to avail themselves of all changes in the scope of the appended claims, it is clear upon examination of the file wrapper history of the prosecution of this patent, and the language of the claims of the patent, that the claims finally granted are expressly limited to an automobile hood of several pieces made of any transparent material and joined together by transparent reinforcing means to form a unitary structure.

The original application filed in the Patent Office had seven claims, all rejected by the Patent Office. A total of nine new claims were filed during subsequent proceedings in the Patent Office, of which five were finally allowed. These rejected claims included language relating to "transparent means for enclosing the portion of the vehicle between the radiator and the cowl"; a "transparent automobile hood formed of transparent material"; and later, "of sheet celluloid". The rejected claims presented nothing patentable over Rumpler (German) No. 379,379 (1923) which, in claims 1 and 4, describe a motor vehicle hood constructed from transparent celluloid. No invention is claimed on the latching means, and the substitution of the temporary hood in place of the conventional hood in an automobile is taught by Martin No. 1,382,959 (1921).

As pointed out by the Patent Office, the combination of a cowl, radiator shell, a hood, and the latching means for the hood, is an old one, as disclosed in Martin. No invention would be involved in substituting sheet celluloid for the wire mesh covering in Martin, in view of the transparent hood shown in Rumpler, the moulded celluloid used in Rumpler being equivalent to sheet celluloid, and the use, broadly, of transparent reinforcing means is not a patentable distinction, since an ordinary prudent mechanic would naturally locate the reinforcing means to conform with the design of the vehicle body. The reinforcing rods in Martin are adapted to conform with the design of the vehicle body, as stated by the Patent Office, and afford no basis for a patentable invention.

The patent was finally allowed only when the claims were presented in the specific language suggested by the Examiner, limiting the grant to the vertical and horizontal transparent members and reinforcing means disposed to conform the body design of the motor vehicle upon which the hood is placed, with latching means on the vehicle body.

The claims of the patent do not disclose the nature of the transparent material of which the hood is made, and al-

---

1. An automobile hood including two transparent vertical members, two substantially horizontal transparent members, a plurality of longitudinally extending transparent reinforcing means connecting the adjoining edges of said members to form a unitary structure therefrom, and securing means adapted to coact with a hold-down latch on the vehicle body to removably secure the said hood to the vehicle body.

though it is stated in the specifications that the hood of the invention may be formed by a single sheet of transparent material or a plurality of independent sheets of such material, the Patent Office repeatedly and finally rejected claims for a one-piece transparent hood, in view of Rumpler whose patent disclosed an automobile hood of transparent celluloid.

In 1949 defendant caused to be made and distributed to its Oldsmobile dealers a quantity of "plexiglas" transparent automobile hoods made of sheet plastic material, to be used in displaying and demonstrating its Oldsmobile "Rocket Engine" and other parts of an automobile usually located under the hood, without the necessity of raising the hood for each individual display or demonstration. This hood was made of a single sheet of material variously referred to as plexiglas, celluloid, and plastic. The transparent portion in the center of the hood covers about two-thirds of its surface.

The claims of plaintiff's patent are specific and limited to a transparent hood consisting of separate vertical and horizontal parts joined together by reinforcing means, in order to form a unitary structure. Defendant's accused hood is made in one piece, with six ordinary screw-fastenings openings for attachment to the body and chassis of the car, without separate vertical members and without any reinforcing means connecting together the several pieces of transparent material comprising the structure of the patent.

During the prosecution of his application in the Patent Office plaintiff cancelled claims sufficiently broad in scope to cover the one-piece hood which was made of a single sheet of transparent plastic and took the claims of the patent which are specific to the plural-piece hood as illustrated in Figures 1 and 2 of the patent, with the reinforcing ribs connecting the individual members. By cancelling his original claims plaintiff created an express limitation relating to the inventive step, and cannot now be permitted to depart from the plain mean-

ing of the language he adopted or to claim from such language a broad and generic construction. A. O. Smith Corporation v. Lincoln Electric Co., 6 Cir., 82 F.2d 226, 229. In determining the scope of a patent, intent and inventor's own appraisal of the nature of the invention are important; that which is not literally within a claim does not infringe. Directoplate Corp. v. Donaldson Lithographing Co., 6 Cir., 51 F.2d 199, 202. Having finally drawn his claims narrowly to avoid the prior art and obtain allowance of the claims, plaintiff cannot now attribute a broader construction to the words of his claims. Falkenberg v. Golding, 7 Cir., 195 F.2d 482. Plaintiff's claims must be read in the light of the invention disclosed and cannot be given a construction broader than the teachings of his patent as shown by the claims allowed. Ford Motor Co. v. Gordon Form Lathe Co., 6 Cir., 87 F.2d 390, 392; Blanc v. Curtis, 6 Cir., 119 F.2d 395, 397.

In Midland Steel Products Co. v. Clark Equipment Co., 6 Cir., 174 F.2d 541, 545, the court quotes from D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 6 Cir., 259 F. 236, 240, 241, "'* * * where the claim defines an element in terms of its form, material, location or function, thereby apparently creating an express limitation, where that limitation pertains to the inventive step rather than to its mere environment, and where it imports a substantial function which the patentee considered of importance to his invention, the court cannot be permitted to say that other forms, which the inventor thus declared not equivalent to what he claimed as his invention, are nevertheless to be treated as equivalent, even though the court may conclude that his actual invention was of a scope which would have permitted the broader equivalency.'" Citing R. M. Hollingshead Co. v. Bassick Mfg. Co., 6 Cir., 73 F.2d 543, 548; Firestone Tire & Rubber Co. v. United States Rubber Co., 6 Cir., 79 F.2d 948, 955; United Shoe Machinery Corp. v. O'Donnell Rubber Products Co., 6 Cir., 84 F.2d 383,

784

386; Shearer v. Atlas Radio Co., 6 Cir., 94 F.2d 304, 306; A. O. Smith Corporation v. Lincoln Electric Co., 6 Cir., 82 F.2d 226, 229. See also Whitman v. Andrus, 6 Cir., 194 F.2d 270.

When claims are rejected and withdrawn while invention is pending in the Patent Office the patentee is estopped to contend that the allowed claims should be given the same breadth and interpretation as the abandoned claims. Baker-Cammack Hosiery Mills v. Davis Co., 4 Cir., 181 F.2d 550, 563; Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 136, 62 S.Ct. 513, 86 L.Ed. 736. In the case of Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220, 312 U.S. 654, 61 S.Ct. 235, 239, 85 L.Ed. 132, the court said: "It is a rule of patent construction consistently observed that a claim in a patent as allowed must be read and interpreted with with reference to claims that have been cancelled or rejected and the claims allowed cannot by construction be read to cover what was thus eliminated from the patent." And, in Smith v. Magic City Kennel Club, Inc., 282 U.S. 784, 790, 51 S.Ct. 291, 293, 75 L.Ed. 707, the Supreme Court stated the rule as follows: " 'The applicant having limited his claim by amendment and accepted a patent, brings himself within the rules that if the claim to a combination be restricted to specified elements, all must be regarded as material, and that limitations imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the inventor and looked upon as disclaimers. Sargent v. Hall Safe & Lock Co., 114 U.S. 63, 86, 5 S.Ct. 1021, 29 L.Ed. 67; Shepard v. Carrigan, 116 U.S. [593] 598, 6 S.Ct. 493, 29 L.Ed. 723, supra; Hubbell v. United States, 179 U.S. [77] 85, 21 S. Ct. 24, 45 L.Ed. 95, supra. The patentee is thereafter estopped to claim the benefit of his rejected claim or such a construction of his amended claim as would be equivalent thereto. Morgan Envelope Co. v. Albany [Perforated Wrapping] Paper Co., 152 U.S. 425, 429, 14 S.Ct. 627, 38 L.Ed. 500.' "

Besides the Rumpler patent, there are others in the art prior to Bobertz who taught the use of transparent hoods on automobiles, such as the French publication LaLocomotion, issued February 11, 1911, and filed in the United States Patent Office January 6, 1931, showing a transparent glass hood on an automobile, and The Motor, a publication of London, England, dated July 2, 1912, showing a Cadillac automobile with a transparent glass hood. Also, in the Kelsey patent, No. 1,045,152 (1912), there is disclosure of a removable transparent dome of an airplane covering the hatchway, and a series of concave and convex transparent sections conforming to the curvature of the housing set in the bottom and sides of the housing to permit *inspection of the exterior mechanisms and surface below.*

A transparent automobile hood was old in the art. Whether it be made of glass, plexiglas, celluloid or plastic, its function prior to the patent here was identical with its function in this patent. The several pieces of transparent material constituting plaintiff's inventive effort function in the same manner and serve the same purpose as the prior art patents and publications, without regard as to the type of transparent material described. The Bobertz patent here does not come up to the high standard of patentable invention required to sustain combination claims such as the claims in this suit. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58.

The claims in suit are not limited to transparent plastic and this limitation cannot be read into the claims in order to save them from invalidity: Patrol Valve Co. v. Robertshaw-Fulton Controls Co., 6 Cir., 210 F.2d 146; Aluminum Company of America v. Thompson Products, Inc., 6 Cir., 122 F.2d 796;

Parke, Davis & Co. v. American Cyanamid Co., supra, in which the court stated, 207 F.2d at page 574:

"The appellant therefore is estopped to deny the limiting effect of the language in the claims because these limitations were adopted to avoid the earlier grounds of rejection and refusal and to obtain allowance of the patent." Citing Shepard v. Carrigan, 116 U.S. 593, 598, 6 S.Ct. 493, 29 L.Ed. 723; I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 433–434, 47 S.Ct. 136, 71 L.Ed. 335; Smith v. Magic City Kennel Club, Inc., 282 U.S. 784, 790, 51 S.Ct. 291, 75 L.Ed. 707, and " * * * An applicant cannot qualify the effect of his acquiescence in the rejection of a claim by stating to the Patent Office that it is not an acquiescence and that he expects to insist upon his right to cover the same ground which the rejected claim covered under other and amended claims. As declared by this court through Chief Justice Taft, then Presiding Judge, in Thomas v. Rocker Spring Co., 6 Cir., 77 F. 420, 431–432, an applicant 'cannot thus destroy the effect of a patent-office ruling.' "

As in the Smith v. Magic City Kennel Club, Inc. case, supra, plaintiff here, resorts to the doctrine of equivalents claiming that defendant's accused structure contains horizontal and vertical members. Though this be a far fetched argument, by comparing plaintiff's structure with the accused hood, there is in any event an absence of "a plurality of longitudinally extending transparent reinforcing means connecting the adjoining edges of said members to form a unitary structure therefrom". In the Smith v. Magic City Kennel Club, Inc. case, supra, the court further points out, 282 U.S. at page 790, 51 S.Ct. at page 294, "The petitioner resorts to the doctrine of equivalents, insisting that the rigid horizontal arm of the respondents is to be treated as the equivalent of the arm of the patent, and that the limiting specifications of the claims may be ignored. What has already been said disposes of this contention, for where a patentee has narrowed his claim, in order to escape rejection, he may not 'by resort to the doctrine of equivalents, give to the claim the larger scope which it might have had without the amendments, which amount to disclaimer.' Weber Electric Co. v. [E. H.] Freeman Electric Co., 256 U.S. 668, 677, 678, 41 S.Ct. 600, 603, 65 L.Ed. 1162; I. T. S. Rubber Co. v. Essex Rubber Co., supra. It should also be observed that the difference here was both in structure and in mode of operation and result."

■ Bobertz obtained no new and unexpected results which would rise to the dignity of patentable invention, since the substitution of one material with known characteristics for another material is not invention.

In Electro Mfg. Co. v. Yellin, the court said, 7 Cir., 132 F.2d 979, 981,

"Plastic products have been made for many years. They are lighter in weight than metal, are translucent, and permit great variation in color. Nemeroff did not disclose a new material, he merely substituted a plastic material for the metal which was used in the prior art, and the District Court held that this did not amount to invention. See Hotchkiss v. Greenwood, 11 How. 248, 52 U.S. 248, 13 L.Ed. 683; Evr-Klean Seat Pad Co. v. Firestone Tire & Rubber Co., 8 Cir., 118 F.2d 600. * * * we do say that there was no patentable genius involved in Nemeroff's disclosures. This was the District Court's conclusion, and we think it was correct."

See also James Heddon's Sons v. American Fork & Hoe Co., 6 Cir., 148 F.2d 230, 232; Seiberling Rubber Co. v. I. T. S. Co., 6 Cir., 134 F.2d 871; Goodwin v. Borg-Warner Corp., 6 Cir., 157 F.2d 267; Timken-Detroit Axle Co. v. Cleveland Steel Products Corp., 6 Cir., 148 F. 2d 267, 271.

The claims in suit are limited to reinforcing means shown as strips 9. The

mere strengthening or reinforcement of Rumpler's plastic hood would not amount to patentable invention. Associated Plastics Companies, Inc., v. Gits Molding Corp., 7 Cir., 182 F.2d 1000, 1005.

Defendant's accused automobile hood does not infringe plaintiff's patent. The patent itself is invalid for want of patentable invention and lack of novelty. Defendant's motion for summary judgment is granted.