## ELECTRO MFG. CO. v. YELLIN et al.

### No. 8108.

Circuit Court of Appeals, Seventh Circuit.

Jan. 22, 1943.

James R. McKnight, of Chicago, Ill., for appellant.

S. Aaron Rosen and Max R. Kraus, both of Chicago, Ill., for appellees.

Before SPARKS and KERNER, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

Appellant charged appellees with infringement of United States Patent No. 2,264,141 issued to Nemeroff on November 25, 1941, on an application filed March 26, 1941. The defenses were noninfringement and invalidity. The District Court decreed that the patent was neither infringed nor valid, and from that decree this appeal is prosecuted.

The invention relates to fluorescent lighting fixtures, and more particularly to those of a type adapted to be suspended from the ceiling. In order to set forth clearly his alleged contribution to the art, Nemeroff, in his specification, presents his view of the art and follows this with the precise advancement which he claims to have made. He states: "The structural portion of lighting fixtures of this type commonly consist of a hemi-cylindrical sheet metal casing which is suspended by means of tubes or other brackets from the ceiling of a room * * *. Tube sockets are attached to the curved surface of this structure so that the tubes when secured in the sockets extend generally horizontally from end to end of the hemi-cylindrical surface. A fixture of this type illuminates the room in which it is disposed comparatively evenly and the fixture in general when not illuminated has a pleasing appearance, especially when the ends of the fixture are covered by generally semi-circular plates or caps which hide the ends of the fluorescent lighting tubes. One defect of a fixture of this type, however, is that when lighted, light will radiate from the tube surfaces and will be

reflected from the curved surface of the fixture in such a manner that the illumination over the curved portion of the fixture is of comparatively even intensity. The ends of the fixture, however, are opaque and cast shadows upon the ceiling, and in general, do not give a satisfactory visual impression when so closely associated with the brightly illuminated surface of the fixture. This defect cannot be overcome by providing transparent ends for the fixture since fluorescent lighting tubes radiate substantially no light in an axial direction. The ends of the tubes, therefore, are dark even though light is being radiated from the curved surfaces of the tube."

Nemeroff then states that the principal object of his invention is to provide a simple, economical, easily assembled and novel fluorescent lighting fixture that overcomes the alleged defect referred to in the second paragraph of his specification.

It is fair to say that this particular field of art is comparatively new, yet it is conceded that all the elements in this patent are old in this particular field, and the only new thing alleged to be disclosed by the patent is that the dark and opaque ends of the fluorescent lighting tubes when in operation are made light. This is done by providing end caps of a translucent material, which are generally semi-circular in shape, and have a diameter somewhat greater than the total diameter of the fixture, including the tubes. These end caps are secured to the end plates which preferably are coated with a light-reflecting medium, such as white enamel, by means of screws threaded into the end plates, and are spaced from those plates by bosses molded integrally with the end caps. At their edges the end caps are provided with inwardly extending flanges which cover the brackets and the dark ends of the fluorescent tubes, and which extend somewhat beyond the ends of the tubes so as to be co-extensive with a portion of the lighted surface of the tubes near their ends.

Preferably these caps should be white, or a shade comparatively close to white, so that when the fixture is not lighted the appearance of the caps will be much the same as that of the tubes and the reflecting surface immediately behind them. When the fixture is lighted, no light will be cast from the tubes in an axial direction to illuminate the caps. However, the light radiating outwardly from the lighted end portion of the tubes will strike the inwardly

extending portions of the flanges. This light will be intercepted by the flanges and because of the translucent nature of the material, the light will be diffused through the flanges and from the flanges inwardly throughout the portion of the caps covering the ends of the fixture. Since the end caps are spaced from the ends of the fixture by bosses, the portion of the light incident upon the inner surfaces of the flanges will be reflected directly against the inner faces of the vertical portions of the end caps, thereby adding to the light diffusion in these portions of the caps.

Because of the translucent nature of the caps, the light which reaches the portions of the caps extending transversely to the axis of the fixture, will illuminate the end caps, and this illumination will prevent the caps from casting shadows upon the ceiling beyond the ends of the fixture. Although the caps thus lighted will not be as bright as the fluorescent tubes, yet the contrast between the two will not be sufficiently great to give an unpleasing visual impression.

The fixtures charged to infringe are referred to in the findings as defendants' exhibits 1 and 2. They are similar to fluorescent fixtures, referred to as defendants' exhibit 4, which were manufactured in 1939 and thereafter by the defendant, American Fluorescent Corporation, and numerous other such manufacturers. The only difference between exhibit 4 and the fixtures charged to infringe is that the alleged infringing fixtures have plastic end caps instead of metal end caps, which were used in defendants' exhibit 4. The plastic end caps in the defendants' fixtures are mounted directly against the end plate of the fixture and no spacing is provided therebetween. The body or shell of defendants' exhibit 4 is white enameled and the shell has end plates to close the shell, and those end plates are also white enameled. Nemeroff describes in his patent the coating of the end plates of the shell with a white enamel to serve as a light-reflecting medium on the end plates. The use of plastic end caps for fluorescent fixtures was disclosed to the American Fluorescent Corporation by others as early as July 1940, and that corporation considered the use of such plastic end caps for such purpose in that month, but it abandoned the same because of the high cost of the manufacture of the dyes. The fixture referred to as exhibit 4 was manu-

factured by the Fluorescent Corporation, and other such manufacturers, as early as 1939. They all have a shell, end plates attached to opposite ends of the shell, brackets attached to the shell adjacent the ends thereof, electric sockets carried by the brackets, fluorescent tubes extending between the sockets, the tubes having dark ends and lighted surfaces, means for attaching the fixture to a support, a pair of metal end caps attached to the end plates, the end caps having inwardly extending flanges, said caps covering the brackets and the dark ends of the tubes and extending inwardly on the dark ends of the tubes and co-extensive with the portion of the lighted surfaces of the tubes, and the end plates of the shell being coated with a light-reflecting medium.

■ The District Court found that defendants' fixtures did not infringe claim 1 or claim 2 of the patent before us, because they had no bosses extending between the end caps and the end plates for spacing the same, nor are the equivalents of such bosses found in the defendants' fixtures, and for the further reason that light is not diffused through the defendants' end caps. We think this conclusion is supported by substantial evidence.

Appellant urges that some light must enter through every joint which is not perfectly sealed, hence it contends that some light must pass through the joint of defendants' device. This contention, we think, is based on theory rather than on fact. It is conceivable that if the joints in defendants' device were left loose they might permit more or less light to pass through them and thereby accomplish in a very small degree the result which plaintiff's boss accomplishes, but it is doubtful. The record does not disclose any such condition. In prosecution of the application for this patent, the patentee cancelled the broader claims and limited himself to the specific details of construction, as set forth in his claims, and of course they should now be thus narrowly construed. We think there was no infringement.

■ The District Court held this patent invalid because it involved no invention over the three following design patents: Biggs, No. 120,563; Hirsh, No. 120,913; and MacCarthy, No. 127,685. Of course anticipation of a mechanical patent is not established by a design patent which does not disclose the structure of the mechanical patent. However, the court also held these claims invalid because they involved no invention over the conventional fluorescent fixture manufactured in 1939, and because the claims merely covered a combination of old elements of a fluorescent fixture plus a plastic end, citing Lincoln Engineering Co. v. Stewart-Warner Co., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008. The design patents were considered by the Examiner during the file wrapper history, but defendants' exhibits 1 and 2 were not considered by him. And while a design patent, as a general rule, will not be considered as anticipating a mechanical patent, because the design patent is not limited to any special kind of material used, yet, that fact would not militate against the court's finding that there was nothing more than mechanical skill disclosed in the mechanical patent. The exhibits referred to as 1 and 2 do disclose everything claimed in this patent except the substitution of plastic end caps instead of metal. Plastic products have been made for many years. They are lighter in weight than metal, are translucent, and permit great variation in color. Nemeroff did not disclose a new material, he merely substituted a plastic material for the metal which was used in the prior art, and the District Court held that this did not amount to invention. See Hotchkiss v. Greenwood, 11 How. 248, 52 U.S. 248, 13 L.Ed. 683; Evr-Klean Seat Pad Co. v. Firestone Tire & Rubber Co., 8 Cir., 118 F.2d 600. Moreover, the use of transparent and translucent ends for lighting fixtures is old. We do not say that the design patents referred to anticipate the patent in suit, yet we do say that there was no patentable genius involved in Nemeroff's disclosures. This was the District Court's conclusion, and we think it was correct.

Appellant relies on a very respectable commercial success to sustain the validity of its patent. However, that will not aid it where, as here, there is no doubt as to invalidity. Moreover, the fluorescent light of this character has enjoyed commercial success during all times of its comparatively short existence, and we can not say that Nemeroff's disclosures constitute the entire cause of the present commercial success, although they have no doubt materially aided it.

The decree is affirmed.