## HINCHMAN et al. v. JIM ROBBINS CO.
### Civ. No. 11036.

United States District Court
E. D. Michigan, S. D.
July 2, 1953.

John C. L. Cowen and Harness, Dickey & Pierce, Detroit, Mich., for plaintiffs.

E. J. Balluff, Detroit, Mich., for defendant.

LEVIN, District Judge.

This suit for infringement of two patents is brought by William H. D. Hinchman, the owner of the patents, and by Florence and Roger McIlwain and the Underground Products Co., as exclusive licensees, against the Jim Robbins Company.

The two patents cover different aspects of a conduit spacer. One is Hinchman patent No. 2,462,399, hereinafter referred to as the utility patent, which covers the structural aspects of the spacer. The other is Hinchman design patent No. 139,568, hereinafter referred to as the design patent, which is for the design and ornamental appearance of the spacer.

The spacer is constituted of a closed frame having a similarly formed top and bottom. It will be seen from the perspective view of the spacer shown here that the top and bottom sides are formed with opposed arcuate portions which serve as seats for the conduits. Reinforcing ribs connect the arcuate seats at their midsection. The purpose of conduit spacers is to position uniformly conduits or pipes, which are commonly used to position and house high voltage and other lines in tiers or banks prior to embedding these in concrete. The conduit spacers are placed in tiers with intervening rows of conduit, and concrete is poured over the structure. The spacer is provided with openings which permit the use of steel reinforcing rods along the long axis of the installation for strength and through which concrete is poured to form a homogeneous mass.

Such installations are commonly made under or adjacent to roads or in the walls of buildings and in other inaccessible places. The difficulty and cost of repairing them makes it necessary that they embody a maximum of strength.

The defendant manufactured the spacers for the plaintiffs from November, 1950, until June, 1951, when the plaintiffs began to manufacture them. Shortly after this the defendant again began to manufacture the accused device, this time without authorization from the plaintiffs.

The defendant's spacer is so strikingly similar to that described in the claims in the utility patent that, if the patent is valid, it is infringed. However, the question of validity of the utility patent must be decided adversely to the plaintiffs since their patent does not satisfy the tests of invention. As initially submitted to the Patent Office, the utility patent had seven claims. All were rejected as meeting full equivalents in prior patents. After persistent presentations to the Patent Office, one claim was allowed and the patent issued.

 The spacer has utility and wide acceptance in the industry. The court is not unmindful of the mandate that it be clearly convinced of the correctness of its position before striking down a patent which has had the careful consideration of the Patent Office and has met with technical and economic success. But this case is not a close one where evidence of commercial success should be resolved in favor of a finding of invention. Goodyear Tire & Rubber Co., Inc., v. Ray-O-Vac Co., 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721.

The idea of the conduit spacer is neither new nor novel. Indeed, there is a long prior art history in regard to conduit spacers and conduit spacing devices, both patented and unpatented.

 Patent No. 461,677 issued to Greenfield in 1891 for an improvement in an electrical conduit, which apparently was not before the Patent Office when it considered the Hinchman application, discloses a conduit spacer structurally and functionally the equivalent of that claimed by Hinchman. Greenfield taught the use of insulating material, with necessary openings to hold the conduit and other openings to permit the passage of the insulating matrix while in a liquid state. The only element of the Hinchman spacer lacking in the Greenfield spacer is the provision for reinforcement of the spacer; and mere provision for reinforcement is not invention, see In re Campbell, 48 F.2d 915, 18 C.C.P.A., Patents, 1351. Moreover, the use by Hinchman of I-beam and T-beam sections, which are themselves well-known expedients for giving strength with lightness, cannot be considered invention merely because a new material is used in the manufacture of the device, see Associated Plastics Companies v. Gits Moulding Corporation, 7 Cir., 182 F.2d 1000, 1005.

Other patents have disclosed the elements of the Hinchman utility patent, either singly or in combination. Parker No. 1,795,884 and Parker No. 1,818,922 showed the use of nonconducting conduit carriers, and the use of the concrete envelope; Koch No. 1,834,404 and Lockwood No. 2,354,919 illustrated the use of pipe spacers closely resembling that of Hinchman, lacking only holes to permit the use of steel reinforcing rods and to allow the passage of the unhardened matrix. It is also true that they did not suggest the use of insulating material.

Hinchman makes much of the superior qualities of lightness, resistance to corrosion and decay, ease of manufacture, and electrical nonconductance conferred on his spacer by the use of plastic and other similar materials. However, it is not invention simply to substitute one material for another in a product to obtain the benefit of some of its known advantages. If the substitution of materials is to constitute invention the use for which monopoly is sought must not be a mere utilization of the obvious advantages of the material, nor an analogous extension of them, but rather the use must be new and novel or founded on genuine originality in the appropriation of the new material to the old use. Compare Evr-Klean Seat Pad Co. v. Firestone Tire & Rubber Co., 8 Cir., 118 F.2d 600 and Electro Mfg. Co. v. Yellin, 7 Cir., 132 F. 2d 979, 981.

The utility patent suggests nothing patentable. No single aspect of it is new, rather it is an aggregation of elements old and well known in the art; the results claimed for it are not new nor does it represent a combination producing results other than those produced by the separate elements of which it is constituted. Compare Office Specialty Manufacturing Co. v. Fenton Metallic Manufacturing Co., 174 U.S. 492, 19 S.Ct. 641, 43 L.Ed. 1058. See also Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008.

The design patent is invalid for the reason that the appearance of Hinchman's spacer is not a matter of aesthetic concern. The spacer is wholly utilitarian. Hinchman stressed that it was designed to give the utmost uniformity, strength and rigidity to the structure, consistent with minimum use of plastic, both before and after the pouring of the concrete envelope. Each element of the design is present only to further that end most effectively.

The number and size of the conduit dictate the number and size of the arcuate seats in the spacer and, to a large extent, the size and shape of the spacer itself. The purpose of the holes is to permit the use of reinforcing bars and to permit the concrete to form a homogeneous whole, avoiding a shear plane along the face of the tier of spacers.

Even the size and shape of the holes are dictated by the desirability of providing space for a maximum amount of the concrete matrix, and by the mechanical necessities controlling the shape of the spacer frame.

A mere functional design is not patentable. Hueter v. Compco Corp., 7 Cir., 179 F.2d 416; Associated Plastics Companies v. Gits Moulding Corp., supra, 182 F. 2d at page 1003.