Gustav H. BOBERTZ, Jr., Appellant,

v.

**GENERAL MOTORS CORPORATION,**
Appellee.

No. 12379.

United States Court of Appeals
Sixth Circuit.

Dec. 14, 1955.

Gregory S. Dolgorukov, Detroit, Mich., for appellant.

Arthur Raisch, Detroit, Mich., for appellee.

Before MARTIN, MILLER and STEWART, Circuit Judges.

MARTIN, Circuit Judge.

The contest here is between Gustav H. Bobertz, Jr., owner of United States Letters Patent No. 1,911,600, covering a transparent automobile hood, and the General Motors Corporation as an alleged infringer of the patent. Plastics Unlimited, Inc., a sales corporation and not a manufacturer, was originally a party to the suit. The suit against that corporation was dismissed on motion, for the reason that the instant litigation was not begun prior to the dissolution of the corporation under the Michigan General Corporation Act, section 450.75. The complaint of Bobertz was served only about two weeks before the expiration of the patent on May 30, 1950. The patent had been issued on May 30, 1933.

Upon denial by General Motors Corporation that the patent was either valid or infringed, issue was joined and a pretrial hearing had. Extensive discovery proceedings ensued. Pursuant to Civil Procedure Rule 56, 28 U.S.C.A., General Motors filed a motion for summary judgment insisting that no genuine issue of material fact was presented; that the patent claims were invalid; and, moreover, that they were not infringed. The prior art was cited and documents filed establishing anticipation of the claimed invention. Several depositions and affidavits were also filed, elaborate briefs were submitted to the court, and oral arguments were presented by both sides. After due deliberation, the district court, in an opinion-order embracing a complete discussion of both the mechanical facts and the applicable law, 126 F.Supp. 780, granted defendants' motion for summary judgment on both grounds and dismissed the suit.

In his deposition, Bobertz asserted that the concept of making a transparent automobile hood came to him through observing a parked Plymouth car which attracted a number of observers because of the fact that its hood was provided with transparent windows for the purpose of making visible the engine underneath the hood. He noticed, however, that people who tried to see the engine through the small openings in the hood gave up in disgust because they could not actually see the engine. His thought was that it would be much simpler if the whole hood were made of transparent celluloid. His first practical application of this thought was to make a transparent hood for a Chevrolet automobile which duplicated in celluloid the 1932 Chevrolet hood, made of sheet steel, consisting of two substantially horizontal members hinged together at their edges along the longitudinal center of the hood. Two vertical side members were hinged to the abutting edges of the horizontal members; and the hood was secured to the chassis by conventional hood fasteners in use by Chevrolet at that time.

The patent in suit displayed a transparent hood in configuration substantially a duplicate of the sheet-metal hood placed on the Chevrolet automobile manufactured by the General Motors Corporation in 1932. Except that the hood is transparent, the claims of the patent in suit substantially describe a 1932 Chevrolet hood. As stated by the United States District Court, the five combination claims of the patent in suit are directed to an automobile hood made of transparent material, consisting of two vertical members, and either one or two horizontal members with a plurality of longitudinally extending transparent reinforcing means connecting the adjoining edges of such members to form a unitary structure therefrom, and securing means adapted to coact with a hold-down latch on the vehicle body to secure removably the hood to the body of the vehicle. The specifications state that the object of the patent is to provide an automobile hood of transparent material permitting at all times full visibility of the engine of a motor vehicle. The specifications declare the novelty of the invention to reside in the transparency of the top and sides of the automobile hood, affording full visibility of the engine. The transparent automobile hood was not intended to be used regularly, but only temporarily to replace the ordinary hood.

The District Court quoted Claim One of the patent as representative. Claim Four is also typical, and reads as follows: "An automobile hood including two transparent vertical members, two substantially horizontal transparent members, a plurality of longitudinally extending transparent reinforcing means connecting the adjoining edges of said members to form a unitary structure therefrom, and means secured to said hood and adapted to permit removable attachment of said hood to a motor vehicle body.".

The District Court asserted that it is clear from consideration of the file-wrapper history of the prosecution of the patent in suit and from the language of the patent claims that the claims finally granted were expressly limited to an automobile hood of several pieces made of any transparent material and joined together by a transparent reinforcing means to form a unitary structure.

All seven claims of the original application filed in the Patent Office were rejected; and a total of nine new claims were filed during subsequent proceedings in the Patent Office whereof five were finally allowed. The rejected claims embraced such language as "transparent means for enclosing the portion of the vehicle between the radiator and the cowl"; "transparent automobile hood formed of transparent material"; and the words "of sheet celluloid."

The District Court found that the rejected claims presented nothing patentable over Rumpler (German) Patent No. 379,379 (1923) which, in Claims One and Four, describe a motor vehicle hood constructed from transparent celluloid. The comment was made that no invention is claimed for the latching means, and that the substitution of a temporary hood in place of the conventional hood was taught in 1921 by Martin in Letters Patent No. 1,383,959.

As pointed out by the Patent Office, the combination of the cowl, radiator shell, hood and latching means therefor is old as disclosed in Martin, no invention being involved in substituting sheet celluloid for the wire-mesh covering employed in Martin, in the light of the transparent hood shown in Rumpler. The court stated that the moulded celluloid used in Rumpler is equivalent to sheet celluloid and the broad use of transparent reinforcing means is not a patentable distinction for the reason that an ordinarily prudent mechanic would naturally locate the reinforcing means to conform to the design of the body of the vehicle. The reinforcing rods in the Martin patent are adapted to conform to the design of the vehicle body, as stated by the Patent Office, and afford no basis for patentable invention.

The final allowance of the patent claims ensued only when the claims were presented in specific language suggested by the examiner. The claims for a one-piece transparent hood were rejected by the Patent Office on the prior art of Rumpler, who disclosed in his patent an automobile hood of transparent celluloid. The claims of the patent in suit do not disclose the nature of the material of which the hood is to be made. The claims of the patent seem specific and limited to a transparent hood consisting of separate vertical and horizontal parts, joined together by reinforcing means, in order to form a unitary structure.

The inventors, while pursuing the application in the Patent Office, cancelled claims sufficiently broad in scope to cover a one-piece hood made of a single sheet of transparent plastic and adopted claims specific as to a multiple-piece hood with reinforcing ribs connecting the individual members.

In Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220, 221, 312 U.S. 654, 61 S.Ct. 235, 239, 85 L.Ed. 132, the Supreme Court said: "It is a rule of patent construction consistently observed that a claim in a patent as allowed must be read and interpreted with reference to claims that have been cancelled or rejected, and the claims allowed cannot by construction be read to cover what was thus eliminated from the patent. [Citing cases.] The patentee may not, by resort to the doctrine of equivalents, give to an allowed claim a scope which it might have had without the amendments, the cancellation of which amounts to a disclaimer. [Citing cases.] The injurious consequences to the public and to inventors and patent applicants if patentees were thus permitted to revise cancelled or rejected claims and restore them to their patents are manifest. See Leggett v. Avery, 101 U.S. 256, 259, 25 L.Ed. 865. True, the rule is most frequently invoked when the original and cancelled claim is broader than that allowed, but the rule and the reason for it are the same if

the cancelled or rejected claim be narrower. [Citing cases.]" Cf. Smith v. Magic City Kennel Club, Incorporated, 282 U.S. 784, 790, 51 S.Ct. 291, 75 L.Ed. 707.

The opinion of this court in A. O. Smith Corporation v. Lincoln Electric Co., 6 Cir., 82 F.2d 226, 229, 230, declared that the inventor had created an express limitation pertaining to the inventive step, and would not be permitted to depart from the plain meaning of the language he adopted, or to claim for such language a broad and general construction. It was asserted that the file wrapper confirmed the conclusion that the inventor had deliberately limited his claim in a specified manner and that the claim, read in the light of the specifications, measures the invention. See also Falkenberg v. Golding, 7 Cir., 195 F.2d 482, 485; Midland Steel Products Co. v. Clark Equipment Co., 6 Cir., 174 F.2d 541, 545; D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 6 Cir., 259 F. 236, 240, 241; R. M. Hollingshead Co. v. Bassick Mfg. Co., 6 Cir., 73 F.2d 543, 548; Firestone Tire & Rubber Co. v. United States Rubber Co., 6 Cir., 79 F.2d 948, 955; Directoplate Corporation v. Donaldson Lithographing Company, 6 Cir., 51 F.2d 199; Baker-Cammack Hosiery Mills v. Davis Co., 4 Cir., 181 F.2d 550, 563.

■ The claims of a patent are to be interpreted, not only in the light of the specifications, but also with reference to file-wrapper history. Whitman v. Andrus, 6 Cir., 194 F.2d 270, 275; Schriber-Schroth Co. v. Cleveland Trust Co., supra.

In addition to the German patent issued to Rumpler, No. 379,379, there is in the record documentary evidence, which was presented to the trial judge, that the prior art before the Bobertz patent disclosed an automobile hood of such transparent material that the engine could be viewed. In the issue of February 11, 1911, of a French publication, La Locomotion, there was depicted a glass hood for demonstrating the en-

gine of an automobile of that period. The fact that the hood revealed in La Locomotion was made of glass and not of plastic is immaterial, for the claims of the patent in suit are not limited to plastic, the use of which in automobile hoods had been revealed in Rumpler. In United States Letters Patent No. 1,045,152, issued to Kelsey on November 26, 1912, covering a "flying machine," transparent sections of celluloid or other transparent material were directed to be so placed that the operator could view "both the operation and adjustment of the mechanism below the plane." A journal published in London, England, The Motor, in its issue of July 2, 1912, showed a Cadillac automobile with a transparent glass hood. In another publication, The Autocar, of date September 28, 1914, this sentence appears: "A very striking feature about the car is a glass bonnet that Mr. Bennett has introduced for trial and demonstration work, and one which apparently attracts a great deal of interest to the car. [A Cadillac.]".

The District Court logically reasoned: "A transparent automobile hood was old in the art. Whether it be made of glass, plexiglass, celluloid or plastic, its function prior to the patent here was identical with its function in this patent. The several pieces of transparent material constituting plaintiff's inventive effort function in the same manner and serve the same purpose as the prior art patents and publications, without regard as to the type of transparent material described. The Bobertz patent here does not come up to the high standard of patentable invention required to sustain combination claims such as the claims in this suit. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Cuno Engineering Corporation v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. The claims in suit are not limited to transparent plastic and this limitation cannot be read into the claims in order to save them from invalidity." Patrol

Valve Co. v. Robertshaw-Fulton Controls Co., 6 Cir., 210 F.2d 146; Aluminum Company of America v. Thompson Products, Inc., 6 Cir., 122 F.2d 796; and Parke, Davis & Co. v. American Cyanamid Co., 6 Cir., 207 F.2d 571, were appropriately cited as authority.

■ Mere substitution of materials, when no new results are accomplished, does not attain the dignity of invention. Timken Detroit Axle Co. v. Cleveland Steel Products Corporation, 6 Cir., 148 F.2d 267, 271; James Heddon's Sons v. American Fork & Hoe Co., 6 Cir., 148 F.2d 230; Seiberling Rubber Co. v. I. T. S. Co., 6 Cir., 134 F.2d 871; Goodwin v. Borg-Warner Corporation, 6 Cir., 157 F.2d 267, 274; United States Appliance Corporation v. Beauty Shop Supply Co., 9 Cir., 121 F.2d 149, 150; Hinchman v. Jim Robbins Co., D.C.E.D.Mich., 113 F. Supp. 302, 304, Levin, J.

The Court of Appeals for the Seventh Circuit, in Electro Mfg. Co. v. Yellin, 132 F.2d 979, 981, said: "Plastic products have been made for many years. They are lighter in weight than metal, are translucent, and permit great variation in color. Nemeroff [inventor of the patent there in suit] did not disclose a new material, he merely substituted a plastic material for the metal which was used in the prior art, and the District Court held that this did not amount to invention. [Citing cases.] Moreover, the use of transparent and translucent ends for lighting fixtures is old. We do not say that the design patents referred to anticipate the patent in suit, yet we do say that there was no patentable genius involved in Nemeroff's disclosures. This was the District Court's conclusion, and we think it was correct."

■ It seems almost idle to reiterate that quite a high standard of invention is now exacted to sustain combination claims embracing old elements in a patent. This was made plain fourteen years ago in the opinion of the Supreme Court in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 90–92, 62 S.Ct. 37, 86 L.Ed. 58. Any

lingering doubt as to the intention of the Supreme Court to require strict rather than liberal construction of combination claims was certainly dispelled by its opinion in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 154, 71 S.Ct. 127, 95 L.Ed. 162, where the majority opinion concluded that the standard of invention used in the lower courts was less exacting than that required where a combination was made up entirely of old components.

In General Motors Corp. v. Estate Stove Co., 6 Cir., 203 F.2d 912, 917, 918, Judge McAllister thus expressed the view of this court: "In an able and ingenious argument, appellee submits that, in specifying a new statutory standard of invention, the Act does not treat combination patents on a different basis from other patents, as it is claimed the Supreme Court did treat them in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; that the new Section 103 defines a single standard of invention for all patents; that the subject matter as a whole would not have been obvious at the time the invention was made; and that the extent to which the Great Atlantic & Pacific Tea Co. case required a different, or more exacting standard, or a more severe test for combination claims than the single standard of invention for all patents, was rejected by Congress in the new Act. We are, however of the view that the principle stated in the Great Atlantic & Pacific Tea Co. case is not modified by the new Act, but continues to be the law, and is here controlling."

■■ The Court of Appeals for the Seventh Circuit, in Associated Plastics Companies v. Gits Molding Corporation, 182 F.2d 1000, 1005, has well said: "A long line of cases has held it to be an essential requirement for the validity of a patent that the subject-matter display invention, more ingenuity than the work of a mechanic skilled in the art. Under this test, some substantial innovation is necessary, an innovation for which

society is truly indebted to the efforts of the patentee. The primary purpose of our patent system is not reward of the individual but the advancement of the arts and sciences. Its inducement is directed to disclosure of advances in knowledge which will be beneficial to society; it is not a certificate of merit, but an incentive to disclosure."

The claimed invention of Bobertz merely duplicated in transparent plastic the conventional Chevrolet hood which was in use in 1932. Bobertz's idea stemmed from his observation of a Plymouth hood having transparent windows for the observation of the engine underneath the hood. The transparent hood designed by Bobertz emanated from an obvious step which might reasonably have occurred to a mechanic skilled in the art.

■ The appellant patent owner insists that the District Court erred in sustaining the motion of appellee for summary judgment on the ground that the patent is invalid for lack of invention, in view of the prior art. The insistence is that there were material issues of fact to be tried, that the court disregarded the presumption of validity from the issuance of the patent by the United States Patent Office and upon subsidiary grounds: all challenging the right of a United States District Court by summary judgment to hold the claims of the patent invalid for want of patentable invention and lack of novelty. The District Judge thus met this argument: "Defendant filed motion for summary judgment under Rule 56, claiming absence of any genuine issue of material fact. Oral argument was had and all exhibits were made available to the court, including defendant's accused device. Briefs were filed fully covering the issues involved. Ordinarily, courts are reluctant to decide important issues by summary judgment because of the lack of a record adequate to explain the issues of fact and law. [Citing cases.] * * * Both parties in this case resorted to extensive discovery proceedings, filing of affidavits and exhibits,

and making admissions. The court also had the benefit of the Patent Office file wrapper showing the history of the prosecution of this patent. The thoroughness of the pre-trial activities of both parties resulted in the elimination of any genuine issue of material fact in dispute. Under such circumstances it has been held that where no factual issues are present and where the patents and products involved are sufficiently simple to make expert testimony unnecessary, disposition under Rule 56, 28 U.S.C.A., is proper." The court cited authorities, including a patent case, Steigleder v. Eberhard Faber Pencil Co., 1 Cir., 176 F.2d 604, certiorari denied, 338 U.S. 893, 70 S.Ct. 244, 94 L.Ed. 548. The opinion in the Steigleder case emphasized the advantage of granting summary judgment instead of subjecting the parties to the expense of a trial, where there was no need of expert witnesses to furnish technical explanations bearing on the structure and mode of operation of fountain pens.

In Vulcan Corporation v. International Shoe Machinery Corporation, D. C.Mass., 68 F.Supp. 990, affirmed on opinion of the District Court in 1 Cir., 158 F.2d 520, certiorari denied, 330 U.S. 825, 67 S.Ct. 868, 91 L.Ed. 1275, and in Alex Lee Wallau, Inc., v. J. W. Landenberger & Co., Inc., D.C.S.D.N.Y., 121 F.Supp. 555, 556, summary judgments dismissing complaints in patent cases were granted. In the last cited case, the District Judge said: "The Court of Appeals of this Circuit has indicated that the remedy of summary judgment is available in patent suits where no factual issues are raised and where the patents and products involved are sufficiently simple to make expert testimony unnecessary. Bridgeport Brass Co. v. Bostwick Laboratories, 2 Cir., 181 F.2d 315, 316, 319."

United States Circuit Judge Soper said: "The plaintiff makes the additional point that there is no precedent in this court for disposing of a question of patent infringement by summary judgment. The practice, however, is not unknown and is properly adopted where as provided in Federal Rules of Civil Procedure, rule 56(c), 28 U.S.C.A., there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. [Citing cases.] We find that situation to prevail in the pending case." Smith v. General Foundry Mach. Co., 4 Cir., 174 F.2d 147, 151.

Where there was no genuine issue of material fact presented, this court has affirmed a summary judgment for the defendant in a patent case. Lincoln Electric Co. v. Linde Air Products Co., 6 Cir., 171 F.2d 223. So, likewise, has the Court of Appeals for the Seventh Circuit. Davison Chemical Corp. v. Joliet Chemical, Inc., 7 Cir., 179 F.2d 793, 795. Cf. Leishman v. Radio Condenser Co., 9 Cir., 167 F.2d 890.

Long before the adoption of the Civil Procedure Rules, including Rule 56, this court, in an opinion by Judge Mack (a model of brevity in a patent case) held that where the only difference between expert witnesses was not as to any technical meaning or circumstance, but as to the proper interpretation of the patent in the light of the undisputed prior art, the question was for the court and not for the jury. Hurin v. Electric Vacuum Cleaner Co., 6 Cir., 298 F. 76, 79, decided in 1924.

The attorney for appellant is altogether too strong in his criticism of the trial judge. There is no justification in the context for his statement that "our courts are established to do justice and not merely dispose of cases in a hurried manner." Nor is there justification for his complaint that the court should not have sustained defendant's motion for summary judgment after the case had been set for trial. At the conclusion of the last hearing, the judge had stated that he wanted everything made available for his inspection and perusal, so that he would not have to call up the attorneys from time to time; and that, after going through all the material before him, he would feel free to advise the attorneys of his decision,

if he became satisfied as to appropriate action on all the questions raised by the motions. The judge did not bind himself to afford the parties a further hearing. He left the matter optional in his own discretion.

In addition to the prior art citations, the District Judge had before him the deposition of the plaintiff-patentee, Bobertz, and his admissions on file made under Rule 56; the depositions of Shurly, sales manager of Plastics Unlimited, and of Wood, its secretary; depositions of Skinner, vice-president of General Motors and general manager of its Oldsmobile Division, and of Chayne, vice-president of General Motors in charge of engineering; affidavits of Barton (identifying a photograph of the 1932 Chevrolet hood), and of Hirshman (identifying photographs of the 1949 Oldsmobile steel hood and the accused plastic hood); and the affidavit of Thorpe identifying the 1949 Oldsmobile steel hood. Moreover, the judge had the benefit of extensive briefs filed by attorneys for the parties. He was in full possession of all essential facts necessary for correct decision of the case.

Judge Koscinski's logically reasoned and authoritatively supported opinion evinces no haste; but, to the contrary, manifests careful study and calm deliberation. This just jurist, working gamely as he did under the handicap of painful ill health, deserves commendation of the excellent performance of his juristic duty. We concur in the conclusion which he reached concerning the invalidity of the claims of the patent in suit. This being true, it is unnecessary for us to decide or even to discuss the question of infringement. That issue is moot. In James Heddon's Sons v. American Fork & Hoe Co., 6 Cir., 148 F.2d 230, 234, Judge Simons thus spoke for this court: "In view of our conclusion that Barnhart's claims are invalid for lack of invention, it becomes unnecessary to consider questions of priority or infringement, and the judgment below is affirmed."

In the instant case, the judgment of the United States District Court is likewise affirmed, for the reason that United States Patent No. 1,911,600, issued May 20, 1933, to Bobertz et al., covering a transparent hood for an automobile, is held invalid for lack of invention.