The **FIBRE METAL PRODUCTS COMPANY**, Plaintiff,

v.

**JACKSON PRODUCTS**, Inc., Defendant.

No. 14488.

United States District Court
E. D. Michigan, S. D.

Feb. 14, 1957.

Thomas S. Donnelly, Detroit, Mich., and Robertson & Youtie, Philadelphia, Pa., for plaintiff.

Barnes, Kisselle, Laughlin & Raisch, Detroit, Mich., for defendant.

FREEMAN, District Judge.

The plaintiff, as owner of United States Letters Patents 2,205,741 and

2,205,742 issued June 25, 1940, on the application of Frederick M. Bowers for an adjustable headband, filed complaint alleging that defendant has and continues to infringe said Letters Patents by making and selling adjustable headbands embodying the inventions disclosed therein without the consent of the plaintiff. An injunction against further infringement, an accounting of profits, treble damages, costs and attorney fees is sought by plaintiff.

Defendant denies infringement and alleges that both the 741 and the 742 patents are invalid because of lack of invention in that every material part of the alleged inventions has been patented and claimed in the following patents:

### United States Patents

| Patentee | Number | Filing Date | Patented |
|---|---|---|---|
| Haege | 470,618 | October 7, 1891 | March 8, 1892 |
| Gifford | 998,892 | August 30, 1909 | July 25, 1911 |
| Becker | 1,817,475 | September 11, 1929 | August 4, 1931 |
| Bowers | 1,874,872 | December 8, 1930 | August 30, 1932 |
| Berger | 2,007,360 | March 29, 1934 | July 9, 1935 |

### Foreign Patents

German patent to Miess No. 16,903, January 31, 1882
German patent to Daub No. 383,982, October 24, 1923

The specifications in the 741 and 742 patents indicate that Bowers intended to employ the headband as a mounting for a welding shield or helmet.

At the time of trial, plaintiff narrowed its claim of infringement to Claims 1, 3 and 4 of the 741 patent and Claims 4 and 9 of the 742 patent.

The structure of the 741 patent as disclosed by the claims, specifications and drawings may be described as a headband with ends that are cut away to provide overlapping end portions which are enclosed within a casing curved to fit the back of the head. The overlapping portions of the headband are placed in the same plane and the sides that are adjacent to one another are provided with a series or rack of teeth which mesh with a gear. This gear is mounted on a shaft which has a flange or an abutment element in the nature of a disc on its inner end. The shaft projects through the outer wall of the casing and terminates within the casing so that the flange or disc on its inner end rests between the inner facing of the inner casing wall and the overlapping end portions. A knob is affixed to the outer end of the shaft so that force may be applied to the knob to rotate the shaft which in turn rotates the gear thereby activating the overlapping end portions so as to increase or decrease the size of the headband. The inner casing wall is maintained smooth and imperforate permitting a snug and comfortable fit on the wearer's head. The outer casing wall, however, has three openings, one large and two small. The shaft and a portion of the underside of the operating knob project into and through the large opening in the outer casing wall in such a manner that the shaft is in effect journaled therein. The two small openings function as an anchor for a spring detent which operates in conjunction with a series of grooves in the circumference of the operating knob to maintain the headband in adjusted position.

The claims of the 741 patent, which the plaintiff alleges the accused device infringes, read as follows:

"1. An adjustable headband of the character described comprising a strip adapted to fit about the head of a wearer and having relatively movable overlapping end portions, each of said end portions being provided with a series of teeth defining a rack, a tubular casing having inner and outer walls receiving said relatively movable end portions, the inner wall of said casing being curved to snugly fit about the head of a wearer, a shaft disposed within the casing and carrying an abutment element interposed between the inner wall of said casing and said overlapping end portions, the outer wall of said casing being formed with an opening, an operating member, said shaft and said operating member extending through said opening, a gear element drivably carried by said shaft and in operative engagement with said racks, and means consisting of elements carried by said operating member and outer wall of the casing which cooperate to yieldably maintain the operating member in an adjusted position.

"3. A headband comprising a band having ends in overlapping relation, a curved tubular casing encircling said overlapping ends, said casing having inner and outer walls, a shaft having an inner end in floating relation to said inner wall and carrying an enlargement within said casing for anchoring said inner end in said casing, and means associated with said shaft for holding said ends of said band in a desired relation to each other.

"4. A headband comprising a head encompassing strip having ends in overlapping relation, a curved casing encircling said overlapping ends and having spaced inner and outer walls, a member having one end thereof terminating in said casing in floating relation to said inner wall, and resilient means associated with said member for holding said ends of said band in a desired relation to each other."

The 742 patent consists of a similar combination of elements, but it presents certain improvements over the structure found in 741. The 742 patent provides for slotted rather than cutaway overlapping end portions so that the overlapping end portions are in offset planes adjacent to one another. In 742, the flange or disc rests between the inner facing of the inner casing wall and the innermost overlapping end portion, thereby providing greater stability. This construction prevents the end portions from stripping off the gear. The 742 patent also added a bearing member which is mounted on the outer face of the outer casing wall and so constructed that when the operating knob is affixed, the spring detent is no longer exposed. In 742, the spring detent is anchored by this bearing member instead of the casing and operates against the underside of the operating knob, thereby permitting the bearing member, in conjunction with a flange added to the knob, to act as a housing, protecting the detent from foreign matter.

The claims of 742, which plaintiff alleges are infringed by the accused device, read as follows:

"4. An adjustable headband of the character described comprising a casing having an outer wall formed with an opening, a band having ends received in said casing, an operating member, means operatively connecting said operating member to said ends, mechanism for maintaining said operating member to define a housing enclosing said mechanism.

"9. An adjustable headband of the character described comprising a tubular casing having an outer wall formed with an opening, a band having ends received in said casing, a member nonrotably carried by said casing, an operating mem-

ber, means operatively connecting said operating member to said ends, means interposed between said members for yieldably maintaining said operating member in an adjusted position, and structure carried by said members and cooperating therewith to define a housing for said last mentioned means."

The accused structure, which is manufactured and sold by the defendant, is quite similar to the structures taught by 741 and 742. It has the same basic arrangement of overlapping end portions equipped with a rack of teeth, a gear element which corresponds to and is the equivalent of the gear, shaft and enlargement or disc found in 741 and 742, a casing, a knob and a spring detent.

The accused structure differs from 741 and 742 in that the inner end of the gear element is provided with a hub which is journaled in an opening in the inner wall of the casing. This hub terminates in the inner wall of the casing, thereby maintaining the outer face of the inner wall of the casing wall smooth so as to permit a snug fit on the head of the wearer. The outer end of the gear element projects through, but is not journaled in, a large opening in the outer wall of the casing. A large knob is affixed to the outer end of the gear element so that the unenclosed spring detent, which is mounted on the outer face of the outer casing wall, operates in conjunction with the underside of the knob to maintain the headband in adjusted position.

The plaintiff contends that the accused structure appropriates the inventions taught by Bowers in 741 and 742. In answer thereto, the defendant contends that 741 and 742 are invalid in that they do not meet the high standard of invention set forth by the Supreme Court in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58, and in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, and that the accused structure does not infringe the claims of said patents.

In reply, plaintiff contends that the high standard of invention set forth in the Cuno Engineering and Great Atlantic & Pacific Tea Co. cases, supra, is no longer applicable because the courts have reverted to the old standard of invention found in Webster Loom Co. v. Higgins, 105 U.S. 580, 26 L.Ed. 1177. Plaintiff argues that, even if the court finds that the high standard of invention set forth in the Cuno Engineering and Great Atlantic & Pacific Tea Co. cases, supra, is applicable, Bowers' 741 and 742 meet said standard. Plaintiff also argues that there are certain presumptions which aid the plaintiff in establishing validity of the patents in suit. Plaintiff contends that there is a presumption that a patent issued by the patent office is valid, a presumption that a patent is valid if it attains great commercial success and a presumption that a patent long acquiesced in by the public is valid.

The basic questions presented for determination by the court are: (1) Are the 741 and 742 patents valid and (2) if valid, are Claims 1, 3 and 4 of 741 and Claims 4 and 9 of 742 infringed? In deciding the question of validity, the court must determine whether the high standard of invention set forth in the Cuno Engineering and the Great Atlantic & Pacific Tea Co. cases, supra, is applicable and the effect of various presumptions relied upon by the plaintiff in support of validity of the patents in suit.

The court recognizes that decisions in recent cases indicate a trend toward a higher standard of invention. In a recent case, Bobertz v. General Motors Corp., 6 Cir., 228 F.2d 94, at page 98, Judge Martin, states:

"It seems almost idle to reiterate that quite a high standard of invention is now exacted to sustain combination claims embracing old elements in a patent. This was made plain fourteen years ago in the opinion of the Supreme Court in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 90–92, 62 S.Ct. 37, 86 L.Ed. 58. Any lingering

doubt as to the intention of the Supreme Court to require strict rather than liberal construction of combination claims was certainly dispelled by its opinion in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 154, 71 S.Ct. 127, 95 L.Ed. 162, where the majority opinion concluded that the standard of invention used in the lower courts was less exacting than that required where a combination was made up entirely of old components."

Judge Martin continues on page 99 of 228 F.2d to state that the Court of Appeals for the Sixth Circuit is of the view that the principle stated in the Great Atlantic & Pacific Tea Co. case is not modified by the Patent Codification Act, 35 U.S.C. § 1 et seq., which became effective on January 1, 1953.

In the Great Atlantic & Pacific Tea Co. case, 340 U.S. 147, on page 150, 71 S.Ct. 127, on page 129, 95 L.Ed. 162, Justice Jackson states:

"It is agreed that the key to patentability of a mechanical device that brings old factors into cooperation is presence or lack of invention. * *

"The negative rule accrued from many litigations was condensed about as precisely as the subject permits in Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008: 'The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.' To the same end is Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334, and Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. * * *

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

Both patents in suit are combination patents "comprising an aggregation of old elements or parts with some slight changes, modifications or substitutions. To constitute patentable invention these elements, parts, and substitutions must cooperate in such a manner as to produce a new, unobvious, and unexpected result. In the absence of invention, utility and novelty are not alone sufficient to sustain the validity of a combination patent." Kawneer Co. v. Pittsburgh Plate Glass Co., D.C.W.D.Mich., 109 F.Supp. 228, 233.

With respect to the test of patentability, the Supreme Court in Sinclair & Carroll Co., Inc. v. Interchemical Corp., 325 U.S. 327, at page 330, 65 S.Ct. 1143, at page 1145, 89 L.Ed. 1644, stated:

"A long line of cases has held it to be an essential requirement for the validity of a patent that the subject-matter display 'invention', 'more ingenuity * * * than the work of a mechanic skilled in the art.' [citing cases] This test is often difficult to apply; but its purpose is clear. Under this test, some substantial innovation is necessary, an innovation

954

for which society is truly indebted to the efforts of the patentee."

■ In determining whether the advance in the art made in each of the patents in suit amounts to invention, this court has examined the prior art and in so doing the court recognized that under the law Bowers "is presumed to know and is chargeable with knowledge of everything disclosed by the prior art." Kawneer Co. v. Pittsburgh Plate Glass Co., D.C., 109 F.Supp. 228, 234. As stated by the Court of Appeals for this Circuit in Allied Wheel Products v. Rude, 6 Cir., 206 F.2d 752, 762:

"As to invention, it is the rule that the patentability of claims depends upon whether or not an applicant, with the cited references before him, could make the structure claimed in his application without the exercise of the inventive faculty. If he could, then no invention is present; and the rule is applicable whether or not the applicant had ever seen any of the cited references."

■ The court also recognizes that foreign patents are pertinent as prior art by reason of what is clearly and definitely expressed in them. Allied Wheel Products v. Rude, 6 Cir., 206 F.2d 752, 761.

The structures found in U.S. Patent No. 470,618 issued to Haege on March 8, 1892, for an adjustable headband to be used in a derby hat and the German Patent No. 16,903, which was issued to Miess on July 1, 1881, and published on January 31, 1882, for an adjustable headband to be used in a military cap, contain substantially all the elements found in the 741 and 742 patents.

The Miess patent is similar in construction to 741 and 742 in that it provides for cutaway overlapping end portions placed in offset planes and equipped with a series of teeth forming a rack, a gear, a shaft, a disc on one end of the shaft and an operating means on the other end of the shaft, utilizing a spring detent to maintain the headband in its adjusted position. The structures differ because Miess uses a lever instead of a knob for its operating means; the lever is mounted on the inner end of the shaft instead of on the outer end of the shaft; the disc is mounted on the outer end of the shaft instead of the inner end of the shaft; and Miess does not have a casing to enclose the operating parts or elements.

The structure taught by the Haege patent is also quite similar to the 741 and 742 patents. Haege utilizes a headband with slotted overlapping end portions equipped with teeth and placed in offset planes, a gear, a shaft, an operating knob which is mounted on the outer end on the shaft, and a casing. Haege differs from the 741 and 742 patents because the inner end of the shaft projects through and is journaled in the inner wall of the casing and the operating knob is held in adjusted position by a lock nut instead of a spring detent.

In an attempt to distinguish Bowers' advance in the art over the art taught by Haege and Miess, the plaintiff argued:

"Our position is simply this: Bowers' advance in the Art consists— compromises the combination of that enlargement or disk on the inner end of that gear and shaft unit with the inner casing wall that is maintained smooth and free of projections. That combination is not disclosed in Haege, because Haege does not disclose the enlargement and it is not disclosed in Miess because Miess doesn't show the casing and that disk S which Miess shows is on the outer wall. It could never be on the inner wall. It is on the outer wall. That is the combination which is the very essence of the invention, and it is the combination which the defendant has appropriated." Transcript pp. 725–726.

■ It seems clear to the court that the 741 and 742 adjustable headbands perform the same function in substantially the same way and utilize the same principles as Miess and Haege. The ele-

ments or parts utilized in 741 and 742 are old. Though the 741 and 742 patents contain certain refinements which are definite improvements over Haege and Miess, these refinements do not meet the high standard of invention now required for patentability.

In 741, Bowers has done nothing more than transpose the operating means and disc found in Miess so that the operating means is positioned on the outer end of the shaft, like Haege, and the disc on the inner end of the shaft. The operating lever found in Miess is replaced by an operating knob similar to that used in Haege. The spring detent found in Miess is retained but altered so that it operates in conjunction with grooves in the circumference of the knob rather than in conjunction with holes placed in a plate attached to the inside of the headband, as in Miess. Bowers then enclosed the end portions, gear, shaft, and disc within a casing curved to fit the back of the wearer's head. Both Haege and an earlier Bowers' patent, United States Letters Patent 1,874,872, provide for a casing.

In the opinion of this court, Bowers has done nothing more than transpose, reallocate or integrate the elements found in Miess, Haege, and Bowers' 1,874,872. It is well settled that transposition, reallocation or integration of old elements or parts does not amount to invention. De Burgh v. Kindel Furniture Co., D.C. W.D.Mich., 125 F.Supp. 468. In the case of Allied Wheel Products v. Rude, 6 Cir., 206 F.2d 752, at page 763, the court states:

> "Where an inventor rearranges or readjusts old elements, or uses their equivalents, to make a new structure in which each part operates substantially as in the old, and with the same results, while this may have required the exercise of a high degree of mechanical skill, the result is not invention."

In the 742 patent, Bowers improved upon the 741 patent by replacing the cutaway overlapping end portions with the slotted overlapping end portions found in Haege and by enclosing the spring detent in a housing so as to protect the detent from foreign matter and to remove any possibility of having the detent interfere with and cut the fingers of the wearer when he turns the operating knob to attain the desired headband size. In constructing the housing, Bowers added a bearing member, reconstructed the detent so that it would engage the underside of the operating knob, and added a flange to the operating knob to give it the appearance of a cap fitting snugly over and enclosing the bearing member.

There is no doubt that the improvements found in 742 are highly beneficial, but, in the opinion of the court, they amount to nothing more than the exercise of a high degree of mechanical skill and not invention.

In considering the question of validity of the patents in suit, the court recognized that said patents are presumed to be valid, that commercial success will tip the scales in favor of validity when there is doubt as to patentability and that there is a presumption of validity arising from public acquiescence. See Title 35 U.S.C. § 282; Even-Cut Abrasive Band & Equipment Corp. v. Cleveland Container Co., 6 Cir., 171 F.2d 873; Blount v. Societe Anonyme du Filtre, 6 Cir., 53 F. 98, 102.

The presumption of validity which attends the grant of a patent cannot survive in the face of undisputed facts showing there is no invention. General Motors Corp. v. Estate Stove Co., 6 Cir., 201 F. 2d 645, at page 664.

It is well settled that commercial success without invention will not make patentability. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Co., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. In Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 6 Cir., 139 F.2d 473, at page 477, the court states:

> "Commercial success of itself does not create invention. [Citation] Commercial success is only a factor entering into the decision, when the question of invention is open to doubt."

The same reasoning applies when considering the effect of public acquiescence. Great weight should be given to public acquiescence, but it is not conclusive. See Keasbey & Mattison Co. v. Philip Carey Mfg. Co., C.C.N.Y., 139 F. 571.

Furthermore, insofar as commercial success is concerned, the plaintiff has not proved to the satisfaction of this court that the commercial success attained by its production model is attributable to the elements which plaintiff contends is the gist of the invention. Plaintiff's production model is basically the 742 structure which, as already indicated, contains certain refinements and improvements over the 741 structure. This lack of proof rules out the possibility of applying the presumption of validity arising from commercial success in this case.

In the present case, there is no such doubt that would warrant application of the above presumptions to sway the court to a finding of validity. There is no invention present in 741 and 742 and in that regard this court reiterates the language of Justice Jackson in the Great Atlantic & Pacific Tea Co. case wherein he stated [340 U.S. 147, 71 S.Ct. 130]:

"This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

Therefore, this court finds that Claims 1, 3 and 4 of the 741 patent and Claims 4 and 9 of the 742 patent are invalid for lack of invention.

Assuming for the sake of argument that Claims 1, 3 and 4 of the 741 patent and Claims 4 and 9 of the 742 patent are valid, it is clear that the accused structure does not read on the claims in suit and therefore does not infringe said claims.

In contending that the accused structure infringes the claims in suit, the plaintiff argues:

"It simply boils down to this: They have simply taken the unit, the gear, the shaft, the enlargement, and they put it in combination with the casing in exactly the same way as we have. And while they put a hole in the casing in the same way as we have, and while they put a hole in the casing, they maintain that inner wall smooth and free." Transcript p. 742.

It is fundamental that the claims of a patent must be examined in light of the state of the art at the time the patent was granted and that said claims are to be construed not only in light of the specifications and drawings but also with reference to the file wrapper history. Remington Rand, Inc. v. Meilink Steel Safe Co., 6 Cir., 140 F.2d 519, 521; Bobertz v. General Motors Corp., 6 Cir., 228 F.2d 94.

Referring to the 741 patent, Claim 1 calls for a "shaft disposed within the casing" and an opening in the outer wall of the casing with a "shaft and * * * operating member extending through said opening." Claim 3 calls for "a shaft having an inner end in floating relation to" the inner wall of the casing. Claim 4 calls for "a member having one end thereof terminating in said casing in floating relation to said inner wall."

The phrase, "a shaft disposed within the casing," which is found in Claim 1, is interpreted by this court to mean a shaft that terminates within the casing. This interpretation is evidenced by the drawings, more particularly Fig. 3, and by the specifications which provide:

"This gear element 26 carries a disk member 27 that is interposed between the wall of the casing of the gear element and overlapping portions 16 and 17; the disk 27 being formed as integral with a sleeve 28." P. 2, Line 17 of the 741 patent.

The Sleeve 28 referred to in the above specification is the shaft and Disk 27 is the disc, flange or enlargement element which is found on the inner end of the shaft. By terminating the shaft within the casing, Bowers was able to maintain the inner wall of the casing smooth and imperforate. Bowers considered this feature as being extremely important and

strongly argued to the patent office examiner that this feature distinguished 741 from Haege and Miess. See the Remarks in Paper No. 6 of the file wrapper for the 741 patent.

The phrase, "a shaft and * * * operating member extending through said opening," which is found in Claim 1, means that both the shaft and a portion of the operating knob project into the large opening in the outer casing wall. Fig. 3 of the drawings clearly indicates that this construction utilizes the portion of the operating knob which projects into said opening as a bearing for the outer end of the shaft, thereby journaling the shaft in the outer casing wall.

The term "floating relation," which is found in both Claims 3 and 4, simply means that the shaft is not journaled in, fixed or positioned to the inner casing wall. See Fig. 3 of the drawings; the testimony of Charles E. Bowers, son of Frederick M. Bowers who filed the patent application, pp. 125, 207 and 208 of the Transcript; and statements made to the court by plaintiff's attorney during the arguments, pp. 521 and 564 of the Transcript.

In the accused structure, the inner wall of the casing is perforated by a small, round opening in which the hub found on the inner end of the gear element is journaled. This journal fixes the inner end of the shaft to the inner casing wall so that the shaft is supported by the casing wall and can turn or rotate on its axis. Plaintiff admits that this hub performs a function by restraining floating motion and that said hub is necessary to make the accused structure a good production model. See the testimony of Charles E. Bowers on Page 258 of the Transcript and the arguments of plaintiff's counsel on Pages 562 and 563 of the Transcript.

The outer end of the gear element, which is equivalent to the gear and shaft found in 741, projects through a large, round opening in the outer casing wall with considerable clearance between the teeth on said gear and the edges of said opening.

This court finds that the accused structure does not have "a shaft disposed within the casing" or a "shaft and operating member extending through" an opening in the outer casing wall. The inner end of the shaft in the accused structure terminates in the inner wall of the casing, the inner casing wall is perforate, the inner end of the shaft is not in "floating relation" to the inner casing wall but instead it is journaled in, fixed or positioned to said inner casing wall, the operating knob does not project into the large opening in the outer casing wall, nor is it mounted on the outer wall of the casing and the outer end of the shaft is not journaled in, fixed or positioned to the outer casing wall.

Therefore, the court concludes that Claims 1, 3 and 4 of the 741 patent are not infringed by defendant's headband.

Referring to the 742 patent, Claim 4 calls for "a structure cooperating with said outer wall and said operating member to define a housing enclosing said mechanism." Claim 9 calls for a structure which is constructed so as "to define a housing."

The housing referred to in Claims 4 and 9 of the 742 patent is nothing more than the combination of an operating knob, which has a flange that gives it the appearance of a cap, and a circular bearing member so that when the knob is affixed to the outer end of the shaft it fits over and encloses the bearing member and the spring detent.

The court finds that no such housing is present on the accused structure. The large operating knob on the accused structure is not the equivalent of the housing employed by Bowers in the 742 patent. The spring detent and the outer end of the gear element are exposed and unprotected from foreign matter.

Therefore, the court concludes that Claims 4 and 9 of the 742 patent are not infringed by the accused structure.

An appropriate order may be presented.